# IN THE SUPREME COURT OF TENNESSEE
## AT NASHVILLE
May 6, 2015 Session Heard at Knoxville

## STEPHEN MICHAEL WEST ET AL. v. DERRICK D. SCHOFIELD ET AL.

**Appeal by Permission from the Chancery Court for Davidson County**
**No. 131627I      Claudia Bonnyman, Chancellor**

---

**No. M2014-02478-SC-R10-CV – Filed July 2, 2015**

---

We granted this extraordinary appeal to determine whether, in this declaratory judgment action, the death-sentenced inmates' claims challenging the constitutionality of a 2014 statute that designated electrocution as an alternative method of execution and the constitutionality of electrocution as a means of execution should be dismissed as unripe. Because the death-sentenced inmates are not currently subject to execution by electrocution and will not ever become subject to execution by electrocution unless one of two statutory contingencies occurs in the future, their claims challenging the constitutionality of the 2014 statute and electrocution as a means of execution are not ripe. Accordingly, we reverse the trial court's decision denying the defendants' motion to dismiss, dismiss the death-sentenced inmates' electrocution claims as unripe, and remand this matter to the trial court for further proceedings consistent with this decision.

**Tenn. R. App. P. 10 Extraordinary Appeal by Permission; Judgment of the Chancery Court Reversed; Electrocution Causes of Action Dismissed**

CORNELIA A. CLARK, J., delivered the opinion of the Court, in which SHARON G. LEE, C.J., and GARY R. WADE, JEFFREY S. BIVINS, and HOLLY KIRBY, JJ., joined.

Herbert H. Slatery III, Attorney General & Reporter; Andrée Blumstein, Solicitor General; Jennifer L. Smith, Deputy Attorney General; Linda D. Kirklen and Scott Sutherland, Assistant Attorneys General (at trial), for the appellants, Derrick Schofield, Wayne Carpenter, Tony Mays, Jason Woodall, Tony Parker, and John Doe Physicians, Pharmacists, Medical Examiners, Medical Personnel, and Executioners.

Stephen M. Kissinger and Susanne Bales, Assistant Federal Community Defenders, Knoxville, Tennessee, for the appellees, Stephen Michael West, Nicholas Todd Sutton, and David Earl Miller.

C. Gene Shiles, Jr., and William J. Rieder, Chattanooga, Tennessee, for the appellee, Billy Ray Irick.

Kelley J. Henry, Supervisory Assistant Federal Public Defender, and Michael J. Passino, Assistant Federal Public Defender, Nashville, Tennessee, for the appellees, Abu-Ali Abdur'Rahman, Donald R. Johnson, Donald Wayne Strouth, Charles Walton Wright, and Edmund George Zagorski.

Kelly A. Gleason and Jonathan King, Assistant Post-Conviction Defenders, Nashville, Tennessee, for the appellee, Lee Hall, Jr.

Robert C. Goodrich, Jr. and J. Patrick Warfield, Nashville, Tennessee, for the amici curiae, Edward Michael Bearman, C. Dewey Branstetter, Jr., L. Webb Campbell, II, Donald Capparella, David M. Eldridge, Claiborne H. Ferguson, Jason Gichner, Robert C. Goodrich, Jr., Daniel A. Horwitz, William Howell, Steven Ross Johnson, William Leader, Bradley A. MacLean, Cynthia W. MacLean, H. E. Miller, Jr., John G. Oliva, Edgar Rothschild, Gregory D. Smith, Christopher Slobogin, Matthew Sweeney, James G. Thomas, and J. Patrick Warfield.

**OPINION**

## I. Factual and Procedural History

Lethal injection has been the default method of execution in Tennessee since March 30, 2000.[1]  However, on September 27, 2013, the Tennessee Department of Correction ("TDOC") replaced its three-drug protocol for lethal injection with a new protocol that provides for lethal injection executions to be carried out by use of a single drug—pentobarbital.  On November 20, 2013, Stephen Michael West and four other death-sentenced inmates ("Inmates")[2] filed a declaratory judgment action in the Chancery

---

[1] Tennessee adopted lethal injection as a method of execution on May 18, 1998.  Tenn. Code Ann. § 40-23-114 (Supp. 1998).  Two years later, on March 30, 2000, Tennessee adopted lethal injection as the default method of execution.  Tenn. Code Ann. § 40-23-114 (Supp. 2000); see also West v. Ray, 401 F. App'x 72, 75 (6th Cir. 2010) (discussing the sequence of events that resulted in lethal injection becoming the default method of execution in this State).

[2] Nicholas Todd Sutton, David Earl Miller, Billy Ray Irick, and Olen Eddie Hutchison joined Mr. West as original plaintiffs on the November 20, 2013 complaint for declaratory relief.  Four other death-sentenced inmates—Edmund Zagorski, Abu-Ali Abdur'Rahman, Charles Wright, and Donnie Johnson—

- 2 -

Court for Davidson County against the Commissioner of TDOC and other TDOC officials (collectively "Defendants").[3] The Inmates challenged the constitutionality and legality of the newly adopted single-drug lethal injection protocol.[4] The Defendants filed an answer on December 13, 2013.[5]

While the Inmates' declaratory judgment action was proceeding in the Chancery Court, the General Assembly enacted the Capital Punishment Enforcement Act ("CPEA"), which became effective on July 1, 2014. Act of May 22, 2014, ch. 1014, 2014 Tenn. Pub. Act 1726. The CPEA, codified as a new subsection of an existing statute, provides as follows:

> (e) For any person who commits an offense or has committed an offense for which the person is sentenced to the punishment of death, the method of carrying out the sentence shall be by lethal injection unless subdivision (e)(1) or (e)(2) is applicable. If subdivision (e)(1) or (e)(2) is applicable, the method of carrying out the sentence shall be by electrocution. The alternative method of execution shall be used if:

---

were allowed to intervene on that same date. Two other death-sentenced inmates, Lee Hall and Donald Strouth, were allowed to intervene as well, on November 21, 2013, and January 3, 2014, respectively. Twenty other death-sentenced inmates were allowed to intervene on October 13, 2014, specifically, Byron Black, Andre Bland, Kevin Burns, Walter Caruthers, Tony Carruthers, Gary Cone, James Dellinger, Jon Hall, Kennath Henderson, Henry Hodges, Stephen Hugueley, David Ivy, David Keen, Larry McKay, Donald Middlebrooks, Pervis Tyrone Payne, Gerald Lee Powers, William Glen Rogers, Oscar Smith, and Andrew Thomas. On November 5, 2014, six other death-sentenced inmates were allowed to intervene, specifically, Corinio Pruitt, Jerry Davidson, Robert Faulkner, Nikolaus Johnson, David Jordan, and Richard Odom. Mr. Hutchison and Mr. Strouth have died since this action began. For purposes of this appeal, all of the original and intervening plaintiffs will be referred to collectively as Inmates, and amended complaint will be used to refer to the complaints or amended complaints that were filed, as these documents do not differ in any respect relevant to the issue presented in this appeal.

[3] The Defendants, all sued in their official capacities, include Derrick Schofield, Commissioner of TDOC; Wayne Carpenter, Warden of the Riverbend Maximum Security Institute ("RMSI"); Tony Mays, Deputy Warden of RMSI; Jason Woodall, Deputy Commissioner of Operations; Tony Parker, Assistant Commissioner of Prisons; and John Doe Physicians, Pharmacists, Medical Examiners, Medical Personnel, and Executioners.

[4] Some of the Inmates previously brought a declaratory judgment action challenging the constitutionality and legality of the prior three-drug protocol, and the protocol, after amendment, was ultimately upheld as constitutional. See West v. Schofield, 380 S.W.3d 105 (Tenn. Ct. App. 2012), perm. app. denied (Tenn. Aug. 17, 2012).

[5] For ease of reference, this opinion will also use the singular to refer to the multiple answers the Defendants filed, as these documents do not differ in any respect relevant to this appeal.

(1) Lethal injection is held to be unconstitutional by a court of competent jurisdiction in the manner described in subsection (d);[6] or

(2) The commissioner of correction certifies to the governor that one (1) or more of the ingredients essential to carrying out a sentence of death by lethal injection is unavailable through no fault of the department.

Tenn. Code Ann. § 40-23-114(e) (Supp. 2014) (footnote added).

On August 22, 2014, after passage of the CPEA, the Inmates sought the Chancery Court's permission to file an amended complaint that included an array of challenges to the constitutionality of electrocution as a method of execution and to the CPEA. The Defendants opposed the request, but the Chancery Court granted the Inmates' request, and the amended complaint was filed on September 18, 2014. Attached to the amended complaint were TDOC's lethal injection protocol, as amended on September 27, 2013, and its electrocution protocol, as amended on June 26, 2014.

One portion of the amended complaint, consisting of more than thirty pages, is entitled "Electrocution Causes of Action." It contains more than 100 allegations and culminates in seven counts. The first four counts allege that electrocution: (1) violates article I, sections 8, 16, and 32 of the Tennessee Constitution and the Eighth and Fourteenth Amendments to the United States Constitution; (2) violates the state and federal constitutions by burning, mutilating, distorting, and disfiguring the death-

_____

[6] Subsection (d) provides in relevant part:

If lethal injection . . . is held to be unconstitutional by the Tennessee supreme court under the Constitution of Tennessee, or held to be unconstitutional by the United States supreme court under the United States Constitution, or if the United States supreme court declines to review any judgment holding lethal injection . . . to be unconstitutional under the United States Constitution made by the Tennessee supreme court or the United States court of appeals that has jurisdiction over Tennessee, or if the Tennessee supreme court declines to review any judgment by the Tennessee court of criminal appeals holding lethal injection . . . to be unconstitutional under the United States or Tennessee constitutions, all persons sentenced to death for a capital crime shall be executed by any constitutional method of execution. No sentence of death shall be reduced as a result of a determination that a method of execution is declared unconstitutional under the Constitution of Tennessee or the Constitution of the United States. In any case in which an execution method is declared unconstitutional, the death sentence shall remain in force until the sentence can be lawfully executed by any valid method of execution.

Tenn. Code Ann. § 40-23-114(d) (2012 & Supp. 2014).

- 4 -

sentenced inmate; (3) violates evolving standards of decency under the state and federal constitutions; and (4) violates the dignity of man in violation of the state and federal constitutions. The remaining three counts allege that the CPEA, specifically Tennessee Code Annotated section 40-23-114(e): (1) violates article I, section 8 of the Tennessee Constitution by its retrospective application; (2) violates the separation of powers provision in article II, sections 1 and 2 of the Tennessee Constitution; and (3) is void for vagueness because it does not define the statutory terms "essential," "ingredients," and "unavailable" and does not provide any procedural guidelines regarding the manner by which the Commissioner is to certify to the Governor that the "ingredients essential" to carrying out an execution by lethal injection are "unavailable."

On October 14, 2014, the Defendants filed an answer to the portion of the amended complaint challenging lethal injection and a motion to dismiss the portion of the complaint entitled "Electrocution Causes of Action." See Tenn. R. Civ. P. 12.02(1), (6). The Defendants raised several grounds in support of their motion to dismiss, including, as pertinent to this appeal, the assertion that "the electrocution claims are not ripe."[7] In a memorandum of law submitted in support of their motion, the Defendants argued that the electrocution claims were not ripe because the Inmates are not currently subject to execution by electrocution and will never be subject to electrocution as a means of execution unless one of the two contingencies of Tennessee Code Annotated section 40-23-114(e) actually occurs. The Defendants alleged that the Inmates were impermissibly seeking a declaratory judgment "based on a hypothetical future application of the method of electrocution to their sentences."

On November 17, 2014, the Inmates filed a response[8] in opposition to the motion to dismiss. The Inmates asserted that passage of the CPEA subjected them to a "credible threat" of execution by electrocution, which was sufficient to establish that their Electrocution Causes of Action are ripe.[9] The Inmates also relied upon the following

---

[7] The other grounds the Defendants relied upon for dismissal of the Electrocution Causes of Action were: (1) the Chancery Court lacked jurisdiction over claims collaterally attacking criminal sentences; (2) the claims were barred by the statute of limitations; (3) the Inmates lacked standing; (4) prior decisions of this Court had upheld the constitutionality of electrocution as a method of execution; and (5) a statute changing the method of execution does not amount to an ex post facto law in violation of article I, section 20 of the Tennessee Constitution.

[8] We again use the singular for ease of reference but recognize that two responses were filed on November 17, 2014: a response by the original plaintiffs and a response by the intervening plaintiffs, who expressly joined in and adopted the arguments made by the original plaintiffs and also advanced additional arguments. The foregoing summary encompasses the arguments contained in both responses.

[9] The Inmates also pointed to written and verbal comments made by counsel for the Defendants during a discovery dispute to establish the ripeness of their electrocution claims. According to the Inmates, these comments amounted to admissions that, if the Chancellor's decision granting the Inmates' motion to compel the disclosure of the identities of the John Doe Defendants was upheld on appeal, the Defendants would be unable to obtain the ingredients essential to carrying out an execution by lethal

language contained in the Chancellor's order granting them permission to file the amended complaint:

> Tenn[essee] Code Ann[otated] [section] 40-23-114(e) reflects the [L]egislature's concern that the drug pentobarbital may not be available to the State for its use in lethal injection. Although hypothetical to some degree, execution by electrocution is possible in this setting. The [L]egislature must have understood and assumed that the drug may not be available or that the courts could prohibit use of the drug for execution. Because the [L]egislature has chosen a default method of execution by electrocution, this court must respect the assumption that use of electrocution for execution of these [Inmates] is a real issue and that its use could occur without any review or testing of the method, and without warning. Consequently, the amendment is not wholly hypothetical or premature.

Although the Inmates attached fifty-seven exhibits to their response,[10] they failed to identify any portion of their amended complaint, or the attached exhibits, which alleged that one of the two contingencies provided in the CPEA, Tennessee Code Annotated section 40-23-114(e), had actually occurred, making them subject to execution by electrocution. The Inmates also failed to reference any portion of their amended complaint that alleged pentobarbital was unavailable. To the contrary, the Inmates' amended complaint alleged that the Defendants would obtain pentobarbital by illegal means or from a compounding pharmacy, and as a result, the drug would be tainted and inappropriate for use in an execution.

On December 8, 2014, the Chancellor entered an order denying the Defendants' motion to dismiss and incorporated into the order her November 21, 2014 bench ruling, which included the following statements:

> Is there a justiciable controversy? Is the electrocution claim not ripe?
>
> . . . .

---

injection. This discovery dispute resulted in an interlocutory appeal in which this Court reversed the Chancellor's decision granting the motion to compel disclosure of the John Doe Defendants' identities. See West v. Schofield, __ S.W.3d __, No. M2014-00320-SC-R11-CV, 2015 WL 1044099 (Tenn. Mar. 10, 2015) [hereinafter West I]. As a result, the Inmates are no longer relying upon defense counsel's comments about the effect of the Chancellor's ruling as a means of establishing that their electrocution claims are ripe.

[10] The exhibits were attached to the intervening plaintiffs' response.

[U]nder the present law, there does appear to be a risk that the provision of [section 40-23-114(e)(2)] will render an inmate in danger of being under sentence of electrocution and unable to present adequate evidence and argument to challenge the sentence.

The State has conceded that it will move from lethal injection protocol to electrocution under the proper circumstance. The certificate to be made by the Commissioner of [TDOC] that the lethal drugs are not available has no particular form, has no schedule. It doesn't even state the certification has to be in writing, although "they certify" would imply writing. But there certainly is no schedule and it doesn't say it has to be in writing.

So the plaintiffs are in danger of being electrocuted in Tennessee's electric chair and therefore the claims are ripe. At least as the complaint— just looking at how the complaint appears.

. . . .

And so, respectfully, I do decline to dismiss any of the causes of action. I think it would be a mistake for me to dismiss claims at this stage and upon the pleading.

. . . .

Because she was considering a Rule 12.02(6) motion to dismiss, the trial court made it clear that she had reviewed only the Inmates' amended complaint, the attached protocols, the Defendants' motion to dismiss, and the Inmates' response and that she had not reviewed the fifty-seven exhibits attached to the Inmates' response.

On December 17, 2014, the Defendants filed an application for extraordinary appeal in the Court of Appeals, seeking review of the Chancery Court's denial of their motion to dismiss. See Tenn. R. App. P. 10. After the Court of Appeals ordered the Inmates to respond to the Defendants' Rule 10 application, the Defendants, on January 14, 2015, filed a motion asking this Court to assume jurisdiction of the Rule 10 application pursuant to Tennessee Code Annotated section 16-3-201(d)(1) (2009 and Supp. 2014). We granted the motion to assume jurisdiction on February 5, 2015. Eight days later, we granted the Defendants' Rule 10 application for extraordinary appeal but limited our review to the following issue:[11]

_____

[11] We declined review of the other issue raised in the Defendants' Rule 10 application: "Does the [C]hancery [C]ourt lack jurisdiction over [the Inmates'] claims that seek to enjoin electrocution as a

- 7 -

Is the [Inmates'] challenge to the constitutionality of electrocution as a method of execution in Tennessee non-justiciable, unripe, and subject to immediate summary dismissal, when none of the plaintiffs is presently subject to execution by electrocution, and the use of that method of execution in Tennessee is contingent on hypothetical, future, and speculative events?

## II. Standard of Review

The standard of review applicable to the issue presented in this extraordinary appeal is the same standard that would apply had the issue arisen in an appeal as of right. Chapman v. DaVita, Inc., 380 S.W.3d 710, 712 (Tenn. 2012) (citing Peck v. Tanner, 181 S.W.3d 262, 265 (Tenn. 2005)). We review a trial court's ruling on a motion to dismiss based on Rule 12.02(6) of the Tennessee Rules of Civil Procedure de novo, with no presumption of correctness. Phillips v. Montgomery Cnty., 442 S.W.3d 233, 237 (Tenn. 2014). Such a motion challenges only the legal sufficiency of the complaint, not the strength of the plaintiff's proof or evidence. Webb v. Nashville Area Habitat for Humanity, Inc., 346 S.W.3d 422, 426 (Tenn. 2011). A motion to dismiss "'admits the truth of all of the relevant and material allegations contained in the complaint, but . . . asserts that the allegations fail to establish a cause of action.'" Brown v. Tenn. Title Loans, Inc., 328 S.W.3d 850, 854 (Tenn. 2010) (quoting Freeman Indus., LLC v. Eastman Chem. Co., 172 S.W.3d 512, 516 (Tenn. 2005)). A court decides a Rule 12.02(6) motion to dismiss by examining the pleadings alone. Webb, 346 S.W. 3d at 426. "[T]he economy provided by Rule 12[.02](6) would be entirely lost" were courts required "to resolve conflicting outside evidence" when ruling on such motions. West, 401 F. App'x. at 75.

When resolving a motion to dismiss, a court "'must construe the complaint liberally, presuming all factual allegations to be true and giving the plaintiff the benefit of all reasonable inferences.'" Webb, 346 S.W. 3d at 427 (quoting Tigg v. Pirelli Tire Corp., 232 S.W.3d 28, 31-32 (Tenn. 2007)). However, for a complaint to survive a motion to dismiss, "'[t]he facts pleaded, and the inferences reasonably drawn from these facts, must raise the pleader's right to relief beyond the speculative level.'" Webb, 346 S.W.3d at 426 (quoting Abshure v. Methodist Healthcare-Memphis Hosps., 325 S.W.3d 98, 104 (Tenn. 2010)). "Moreover, courts are not required to accept as true assertions that are merely legal arguments or 'legal conclusions' couched as facts." Id. (quoting Riggs v. Burson, 941 S.W.2d 44, 47-48 (Tenn. 1997)).

---

method of execution, when such a challenge impacts the validity of and amounts to a collateral attack upon a criminal sentence?"

## III. Analysis

### A. *Justiciability*

The United States Constitution confines the jurisdiction of the federal courts to "cases" and "controversies." U.S. Const. art. III, § 2. Although the Constitution of Tennessee contains no similar express limitation on the exercise of judicial power, Norma Faye Pyles Lynch Family Purpose LLC v. Putnam Cnty., 301 S.W.3d 196, 202 (Tenn. 2009) (citing Miller v. Miller, 261 S.W. 965, 971 (Tenn. 1924)), Tennessee courts have long recognized that "'the province of a court is to decide, not advise, and to settle rights, not to give abstract opinions,'" id. at 203 (quoting State v. Wilson, 70 Tenn. 204, 210 (1879)). Thus, Tennessee courts decide only "'legal controversies,'" id. (quoting White v. Kelton, 232 S.W. 668, 670 (Tenn. 1921)), and a legal controversy exists "when the disputed issue is real and existing, and not theoretical or abstract, and when the dispute is between parties with real and adverse interests," id. (citations omitted).

To determine whether a particular case involves a legal controversy, Tennessee courts use justiciability doctrines that "mirror the justiciability doctrines employed by the United States Supreme Court and the federal courts," and these doctrines "include: (1) the prohibition against advisory opinions, (2) standing, (3) ripeness, (4) mootness, (5) the political question doctrine, and (6) exhaustion of administrative remedies." Id. (footnotes omitted). Without justiciability doctrines, "'the courts would be called upon to decide abstract questions of wide public significance even though other governmental institutions may be more competent to address the questions and even though judicial intervention may be unnecessary to protect individual rights.'" Am. Civil Liberties Union of Tenn. v. Darnell, 195 S.W.3d 612, 620 (Tenn. 2006) (quoting Warth v. Seldin, 422 U.S. 490, 500 (1975)).

We recently reaffirmed the necessity and importance of justicability doctrines in West I, stating:

> [A] declaratory judgment action cannot be used by a court to decide a theoretical question, render an advisory opinion which may help a party in another transaction, or allay fears as to what may occur in the future[.] Thus, in order to maintain an action for a declaratory judgment[,] a justiciable controversy must exist. For a controversy to be justiciable, a real question rather than a theoretical one must be presented and a legally protectable interest must be at stake. *If the controversy depends upon a future or contingent event, or involves a theoretical or hypothetical state of facts, the controversy is not justiciable.* If the rule were otherwise, the courts might well be projected into the limitless field of advisory opinions.

West I, 2015 WL 1044099, at \*13 (emphasis added) (citations omitted) (quoting State v. Brown & Williamson Tobacco Corp., 18 S.W.3d 186, 193 (Tenn. 2000)) (internal quotation marks omitted).

## B. Ripeness

Ripeness, the justiciability doctrine at issue in this appeal, requires a court to answer the question of "whether the dispute has matured to the point that it warrants a judicial decision." B & B Enters. of Wilson Cnty., LLC v. City of Lebanon, 318 S.W.3d 839, 848 (Tenn. 2010). "[R]ipeness is peculiarly a question of timing." Reg'l Rail Reorganization Act Cases, 419 U.S. 102, 140 (1974). "[I]ts basic rationale is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements . . . ." Abbott Labs. v. Gardner, 387 U.S. 136, 148 (1967), overruled on other grounds by Califano v. Sanders, 430 U.S. 99, 105 (1977). "The central concern of the ripeness doctrine is whether the case involves uncertain or contingent future events that may or may not occur as anticipated or, indeed, may not occur at all." B & B Enters., 318 S.W.3d at 848 (citing Lewis v. Cont'l Bank Corp., 494 U.S. 472, 479-80 (1990)).

In determining whether a particular case is ripe, courts typically engage in a two-part analysis, evaluating "[1] the fitness of the issues for judicial decision and [2] the hardship to the parties of withholding court consideration." Abbott Labs., 387 U.S. at 149; see also B & B Enters., 318 S.W.3d at 848; Warshak v. United States, 532 F.3d 521, 525 (6th Cir. 2008) (en banc) (describing the two-part inquiry as: "(1) [I]s the claim fit for judicial decision in the sense that it arises in a concrete factual context and concerns a dispute that is likely to come to pass? [A]nd, (2) what is the hardship to the parties of withholding court consideration?" (citations and internal quotation marks omitted)). We turn now to applying this two-part analysis in this appeal, mindful of the standard governing our review of the trial court's denial of a motion to dismiss.

### 1. Fitness for Judicial Decision

The first prong—fitness for judicial decision—requires us to consider whether the Inmates' electrocution claims are based on an existing legal controversy or on hypothetical and contingent future events that may never occur. Texas v. United States, 523 U.S. 296, 300 (1998) (stating that "[a] claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, *or indeed may not occur at all.*'" (emphasis added) (quoting Thomas v. Union Carbide Agric. Prods. Co., 473 U.S. 568, 580-81 (1985))). No allegation of the amended complaint, or any other portion of the record on appeal, demonstrates that the Inmates are presently subject to execution by electrocution. Moreover, the plain language of the CPEA establishes that none of the Inmates will ever become subject to execution by electrocution unless one of two statutory contingencies actually occurs. Indeed, the CPEA authorizes the use of

electrocution as a method of execution, if, and only if, one of the following contingencies occurs:

> (1) Lethal injection is held to be unconstitutional by a court of competent jurisdiction in the manner described in subsection (d); or
>
> (2) The commissioner of correction certifies to the governor that one (1) or more of the ingredients essential to carrying out a sentence of death by lethal injection is unavailable through no fault of the department.

Tenn. Code Ann. § 40-23-114(e). The Inmates have failed to allege in either their amended complaint or their response in opposition to the Defendants' motion to dismiss that one of these contingencies has occurred. Indeed, the Inmates have acknowledged that neither contingency has occurred.

The Inmates have attempted to establish ripeness by arguing that TDOC will have difficulty procuring pentobarbital. This argument is contrary to the allegations of the Inmates' amended complaint, which actually state that the Defendants will obtain pentobarbital, albeit by illegal means and in a tainted form. Nevertheless, even taking the Inmates' argument as true, it is not enough to establish that their electrocution claims are ripe because TDOC's mere inability to obtain pentobarbital would not alone trigger the provisions of the CPEA and make the Inmates subject to execution by electrocution. The CPEA is contingent upon the Commissioner's certification to the Governor that "one (1) or more of the ingredients essential to carrying out a sentence of death by lethal injection is unavailable through no fault of" TDOC. Tenn. Code Ann. § 40-23-114(e)(2). The unavailability of a particular drug does not trigger the CPEA. Indeed, as counsel for the Defendants pointed out during oral argument, and as prior litigation involving these Inmates illustrates, the Commissioner retains the discretion to modify the lethal injection protocol.[12] Even assuming TDOC is unable to obtain pentobarbital, the Commissioner may choose to modify the lethal injection protocol and designate a more readily obtainable drug instead of making a certification to the Governor under the CPEA. Thus, the Electrocution Causes of Action are not ripe for judicial decision because they involve a method of execution that does not now presently apply to the Inmates and will never apply to them unless one of two statutory contingencies occurs in the future.

## 2. Hardship to the Parties of Withholding Court Decision

The second part of the ripeness analysis requires consideration of whether withholding adjudication of the Electrocution Causes of Action at this time will impose

---

[12] See West, 380 S.W.3d at 107-08 (explaining that, after the trial court held that the three-drug protocol lacked sufficient safeguards to ensure that the first drug had rendered the inmate unconscious, TDOC revised the protocol to include such safeguards).

any meaningful hardship on the parties. "The prototypical case of hardship comes from the claimant who faces a choice between immediately complying with a burdensome law or 'risk[ing] serious criminal and civil penalties.'" Warshak, 532 F.3d at 526 (quoting Abbott Labs., 387 U.S. at 153). This prototypical hardship is not present in this litigation. The CPEA does not force the Inmates to make any choice. In fact, as already discussed, the CPEA provides for carrying out executions by electrocution if, and only if, one of two statutory contingencies actually occurs. The CPEA does not direct the Inmates "to engage in, or to refrain from, any conduct." Texas, 523 U.S. at 301. The CPEA is thus fundamentally different from the statutes at issue in the decisions the Inmates have relied upon in support of their argument that their Electrocution Causes of Action are ripe. See Susan B. Anthony List v. Driehaus, __ U.S. __, 134 S. Ct. 2334, 2347 (2014) (stating that "denying prompt judicial review would impose a substantial hardship on petitioners, forcing them to choose between refraining from core political speech on the one hand, or engaging in that speech and risking costly Commission proceedings and criminal prosecution on the other"); Erwin Billiard Parlor v. Buckner, 300 S.W. 565, 566 (Tenn. 1927) (holding that a declaratory judgment action brought by proprietors of pool rooms against the sheriff to challenge the constitutionality of a law declaring the operation of pool rooms unlawful was ripe because the plaintiffs' property rights in their businesses "would be destroyed by the enforcement of the statute"); Blackwell v. Haslam, No. M2011-00588-COA-R3-CV, 2012 WL 113655, at *1-2 (Tenn. Ct. App. Jan. 11, 2012), perm. app. denied (Tenn. Apr. 11, 2012) (holding that the plaintiff's action was ripe where the plaintiff, who had received a pardon for three felony drug convictions in Georgia and had his firearm rights expressly restored by the pardon, asked the court to determine whether a Tennessee criminal statute prohibiting anyone "convicted of a felony drug offense" from possessing a firearm applied to him, in light of a Tennessee Attorney General's opinion stating that the criminal statute applied to pardoned felony drug offenders).

The Inmates nevertheless argue that withholding adjudication of their Electrocution Causes of Action will result in hardship because TDOC has no statutory obligation to provide them with notice of any future certification by the Commissioner of the unavailability of an ingredient essential to lethal injection pursuant to the CPEA or any future decision to rely upon the CPEA and carry out their executions by electrocution. The Inmates assert that, without a mechanism for providing them with sufficient notice of such future decisions, they will be deprived of any meaningful opportunity in the future to litigate their Electrocution Causes of Action and should be allowed to litigate them now.

We agree that the Inmates' failure to receive notice could, under certain circumstances, be a hardship. The Defendants have not discounted the importance of notice to the Inmates of any decision to switch from lethal injection to electrocution but have simply contended that no last-minute switch is possible. Specifically, at oral argument before this Court, counsel for the Defendants pointed to provisions of the lethal

- 12 -

injection and electrocution protocols which require TDOC to decide, approximately two weeks before a scheduled execution, whether the execution will be carried out by lethal injection or by electrocution. Counsel for the Defendants assured this Court that these requirements, as well as other provisions of the protocols and other practical considerations, prevent the Commissioner and TDOC from ever undertaking any last-minute switch from lethal injection to electrocution.[13]

As we recognized in West I, "public officials in Tennessee are presumed to discharge their duties in good faith and in accordance with the law." West I, 2015 WL 1044099, at *14 (citing Reeder v. Holt, 418 S.W.2d 249, 252 (Tenn. 1967); Mayes v. Bailey, 352 S.W.2d 220, 223 (1961)). The Inmates' assertions that the Defendants will decide in the future to rely upon the CPEA but fail to provide them with adequate notice of the decision are contrary to this presumption of good faith, particularly given the statements made by counsel for the Defendants during oral argument. We decline to hypothesize that the Defendants will take action in the future inconsistent with the presumption of good faith and then rely on our own hypothesis as a basis for resolving unripe constitutional questions regarding electrocution and the CPEA. Doing so would be contrary to ripeness principles and to the longstanding rule that courts decide constitutional issues only when necessary. In re Taylor B.W., 397 S.W.3d 105, 114 (Tenn. 2013) ("[W]e do not address constitutional questions unless it is necessary to adjudicate the rights of the parties.") (citing State v. Taylor, 70 S.W.3d 717, 720 (Tenn. 2002)).

However, our conclusion should not be understood as rejecting the Inmates' concerns regarding their right to and need for notice of any decision by the Commissioner to invoke the CPEA or to utilize electrocution as the method of execution. We view these concerns as legitimate but insufficient to force the Defendants to litigate an array of unripe constitutional challenges—comprising more than thirty pages of the amended complaint and involving over a hundred new allegations—to a method of execution that does not now and may not ever apply to the Inmates.

Moreover, a readily available alternative means exists for ameliorating the Inmates' notice concerns. None of the Inmates has an execution date scheduled because all of the Inmates have received stays of execution from this Court, which will remain in

---

[13] Counsel for the Defendants pointed out that: (1) the protocol for lethal injection describes an execution team different from the execution team described in the protocol for electrocution; (2) each protocol requires the execution team to undertake training within two weeks of a scheduled execution; and (3) the protocols require the execution chamber to be configured differently for lethal injection than for electrocution. We note as well that the lethal injection protocol requires the execution team to assemble, prepare, and test all appliances and equipment a week before an execution by lethal injection. The electrocution protocol similarly requires the execution team to inspect and test the electric chair one week before an execution by electrocution.

effect "until final disposition" of the declaratory judgment action challenging lethal injection. Upon final disposition of that action, this Court has already declared its intent sua sponte to schedule new execution dates. All orders setting new execution dates will direct the State to ensure that the death-sentenced inmates receive adequate notice, prior to their scheduled execution dates, of the method that TDOC will use to carry out their executions and of any decision by the Commissioner or TDOC to rely upon the CPEA. The amount of notice deemed adequate will be determined at the time new execution dates are set.[14] Requiring the provision of such notice will afford the Inmates sufficient time *to file* any legal challenges to electrocution that may become ripe in the future.

Should the Inmates need additional time *to litigate* future ripe challenges to electrocution, the Inmates may seek stays from this Court. Each initial motion for stay that any of these Inmates files shall be evaluated by the standard in effect prior to July 1, 2015, rather than the standard that became effective on July 1, 2015. See In Re Rule 12, Section 4(E), Rules of the Tennessee Supreme Court, No. ADM2015-00524 (Tenn. Mar. 25, 2015) (order amending Rule 12 effective July 1, 2015 and providing that the amendments apply "to any motion to set an execution date, or any motion the effect of which would be to stay or delay an execution date, filed on or after that date"). By doing so, we obviate the Inmates' other assertion of hardship, which is that withholding a decision now on their Electrocution Causes of Action will subject them to the "more stringent" standard that will become effective on July 1, 2015, should a motion for stay be necessary to litigate ripe electrocution claims in the future.[15]

---

[14] We encourage TDOC to exercise the authority it possesses and adopt rules or protocols that specify the notice that will be given and the procedure that will govern should either of the contingencies in the CPEA occur. See Tenn. Code Ann. § 40-23-114(c) (stating that TDOC "is authorized to promulgate necessary rules and regulations to facilitate the implementation" of section 40-23-114). We note that during oral argument counsel for the Inmates indicated that fourteen days would be the *minimum* amount of notice needed.

[15] For purposes of this appeal, we need not decide whether the amendment which became effective July 1, 2015, actually constitutes a more stringent standard than existed prior to its effective date.

- 14 -

# IV. Conclusion

The Electrocution Causes of Action depend entirely on future and contingent events that have not occurred and may never occur, and as a result, are unripe and nonjusticiable. Accordingly, we conclude that the trial court erred by denying the Defendants' motion to dismiss the Electrocution Causes of Action of the amended complaint.[16] The judgment of the trial court is reversed, and the Electrocution Causes of Action are dismissed. In the interests of justice, costs of this appeal are taxed to the Defendants.

_____
CORNELIA A. CLARK, JUSTICE

---

[16] The Inmates have argued in this Court, as they did in the trial court, that the Defendants' ripeness argument encompasses only four of the seven electrocution causes of action and does not relate to the three claims challenging the constitutionality of the CPEA. We disagree. The Defendants argued, both in their motion to dismiss and the memorandum of law supporting it, that no justiciable controversy exists regarding electrocution, making the "electrocution claims" unripe. The Defendants did not limit their ripeness argument in the manner the Inmates suggest but specifically sought dismissal of all "Electrocution Causes of Action" of the amended complaint on ripeness grounds. We agree that all should be dismissed as unripe.