Lee, Sharon G., J., Dissenting.
The question is not whether the State will execute Billy Ray Irick, but whether the State will execute Mr. Irick before an appellate court can review the chancery court's dismissal of the claims by Mr. Irick and thirty-two other death row inmates that Tennessee's newly adopted method of lethal injection is unconstitutional. In his motion to vacate the August 9, 2018 execution date, Mr. Irick has shown a likelihood of success on appeal by asserting error in the chancery court's factual findings, its legal conclusions, and its denial of his motion to amend. Unless the execution date is vacated, Mr. Irick-unlike the other thirty-two death row inmates who also have challenged the State's method of execution-will not live to see whether the chancery court's decision was correct.
If an appellate court determines that the State's lethal injection protocol, adopted on July 5, 2018, is unconstitutional, the harm to Mr. Irick is irreparable. Yet a brief delay in the execution until after appellate review is concluded causes only minimal, if any, harm to the State. By denying Mr. Irick's motion to vacate his August 9 execution, the Court deprives Mr. Irick of his right to appellate review of his challenge to the State's lethal injection protocol. I will not join in the rush to execute Mr. Irick and would instead grant him a stay to prevent ending his life before his appeal can be adjudicated.
The State opposes Mr. Irick's motion to vacate his execution date by emphasizing the nature of the crimes he committed thirty-three years ago and the fact that three previous execution dates have "come and gone." Without a doubt, over thirty years ago, Mr. Irick committed horrendous crimes and deserves to be punished. He has had previous execution dates reset by this Court for good reason. Our decision whether to briefly stay Mr. Irick's execution until after his appeal is concluded cannot be dictated by the nature of his crimes, how long it has been since he was sentenced to die, or how many times his execution date has been reset. These emotional considerations should not sway or sidetrack us. Rather, logic and reason must prevail.
I.
Since 2010, the Tennessee Department of Correction (TDOC) has repeatedly changed its lethal injection protocol, resulting in litigation and delays. The chronology of events surrounding Mr. Irick's execution began at a deliberate pace but in the past few months has proceeded at breakneck speed.
In 1986, a jury sentenced Mr. Irick to death by electrocution. See State v. Irick, 762 S.W.2d 121 (Tenn. 1988). After Mr. Irick completed the standard three-tier review process, this Court set his execution date for December 7, 2010. We thereafter remanded Mr. Irick's case to the Knox County Criminal Court to resolve his claim that he was not mentally competent to be executed. The trial court ruled he was mentally competent, and in September 2010, we affirmed that decision. State v. Irick , 320 S.W.3d 284, 286 (Tenn. 2010).
*692 In November 2010, TDOC changed its lethal injection protocol by adopting a three-drug protocol of sodium thiopental, pancuronium bromide, and potassium chloride. Mr. Irick and other death row inmates filed suit in the Davidson County Chancery Court for declaratory judgment and injunctive relief, asserting that the protocol violated constitutional prohibitions against cruel and unusual punishment. Mr. Irick and the other inmates prevailed. On November 22, 2010, the chancery court ruled that the State's lethal injection method was cruel and unusual because the protocol did not ensure that the inmate was unconscious before injection of the second drug. On November 29, 2010, in light of this ruling, we granted Mr. Irick a stay of execution, effective throughout the pendency of any appeal of the chancery court's final judgment in the declaratory judgment action.
TDOC then revised its protocol to include checks for consciousness before injection of the second drug. On March 24, 2011, the chancery court ruled that the revised protocol was constitutional. The Court of Appeals affirmed this decision, and this Court denied permission to appeal. West v. Schofield , 380 S.W.3d 105 (Tenn. Ct. App. 2012), perm. app. denied (Tenn. Aug. 17, 2012).
On September 27, 2013, TDOC replaced its three-drug protocol with a single-drug protocol that used only pentobarbital. On October 3, 2013, the State moved to set Mr. Irick's execution date. On October 22, 2013, this Court set the execution date for January 15, 2014. On November 20, 2013, Mr. Irick and other death row inmates filed a declaratory judgment action in the Davidson County Chancery Court, challenging the constitutionality and legality of the newly adopted single-drug protocol. On December 6, 2013, Mr. Irick filed a motion to alter, amend, or modify the order setting his execution date, in light of the chancery court's scheduling order setting the trial for July 7, 2014. On December 11, 2013, we reset Mr. Irick's execution date to October 7, 2014, to allow enough time for his constitutional challenge to be heard.
Meanwhile, the Tennessee General Assembly enacted Tennessee Code Annotated section 40-23-114(e), effective July 1, 2014, which provides for death by electrocution if lethal injection is held unconstitutional or if the TDOC Commissioner certifies to the governor that one or more of the ingredients essential to carrying out death by lethal injection is unavailable through no fault of TDOC.
On September 18, 2014, the inmates amended their lawsuit to challenge the constitutionality of death by electrocution. Due to an interlocutory appeal in a discovery dispute, this Court, on September 25, 2014, vacated its previous order setting Mr. Irick's October 7, 2014 execution date. The discovery dispute eventually resulted in this Court's March 10, 2015 decision in West v. Schofield, 460 S.W.3d 113 (Tenn. 2015). A second interlocutory appeal resulted in this Court's July 2, 2015 decision in West v. Schofield , 468 S.W.3d 482 (Tenn. 2015). Reversing the chancery court's denial of the defendants' motion to dismiss, we held that the inmates' claims challenging the constitutionality of the 2014 statute and electrocution as a means of execution were not ripe because the inmates were not then and would not ever be subject to execution by electrocution unless one of the two statutory contingencies occurred in the future. Id. at 484-85.
On September 24, 2014, TDOC amended the lethal injection protocol to allow the use of compounded pentobarbital instead of manufactured pentobarbital. On June 25, 2015, TDOC again amended the protocol to incorporate a contract with a pharmacist for compounded pentobarbital. After the chancery court denied relief in the *693 declaratory judgment action that had begun in November 2013, we assumed jurisdiction over the appeal. On March 28, 2017, we held that the chancery court did not err in concluding that the inmates failed to prove that the one-drug pentobarbital protocol, on its face, violated the constitutional prohibitions against cruel and unusual punishment. West v. Schofield, 519 S.W.3d 550, 552 (Tenn. 2017).
On January 8, 2018, TDOC again changed the protocol, adopting a new three-drug protocol using Midazolam, vecuronium bromide, and potassium chloride as an alternative method of execution to the single-drug pentobarbital protocol. On January 18, 2018, we set Mr. Irick's execution date for August 9, 2018.
On February 20, 2018, in response to the change of protocol, Mr. Irick and thirty-two other death row inmates filed a declaratory judgment action challenging the constitutionality of the newly adopted three-drug lethal injection protocol in the Chancery Court for Davidson County. See Abdur'Rahman v. Parker, No. 18-183-III (Davidson Cnty. Chancery Ct., Part III).
On July 5, 2018, only four days before the trial was set to begin, TDOC again revised the protocol. TDOC eliminated the alternative single-drug pentobarbital protocol so that the exclusive method of execution was the three-drug protocol using Midazolam, vecuronium bromide, and potassium chloride.
During the ten-day trial, based on a 104-page complaint, twenty-three witnesses testified and 139 exhibits were admitted into evidence. On July 26, 2018 at 6:32 p.m., the chancery court issued a forty-nine page decision, dismissing the case because Mr. Irick and the other inmates had failed to establish that Tennessee's three-drug lethal injection protocol was unconstitutional or unlawful.
Mr. Irick wasted no time responding to this adverse ruling. On July 30, 2018, he filed in this Court a motion to vacate his August 9, 2018 execution date. He also filed a notice of appeal in the Court of Appeals. On this same date, July 30, the Court of Appeals, on its own motion, issued an order noting that Mr. Irick's execution was set for August 9, and that it had no authority to stay the execution. Significantly, the Court of Appeals advised that, although it would consider the issues presented in the appeal with deliberate speed, it would not have sufficient time to review the chancery court's decision and issue an opinion before Mr. Irick's scheduled execution.
II.
This case presents us with the first opportunity to apply revised Tennessee Supreme Court Rule 12.4(E) since it became effective on July 1, 2015. Rule 12.4(E) requires Mr. Irick to "prove a likelihood of success on the merits in [collateral litigation]" for this Court to grant the delay he requests. Tenn. Sup. Ct. R. 12.4(E). Thus, the relevant inquiry is whether Mr. Irick has a likelihood of success on the merits in his appeal of his claims that the State's three-drug protocol exposes him to an imminent risk of serious illness and needless suffering and that the State has a known and available alternative method of execution that entails a lesser risk of pain. See West, 519 S.W.3d at 563-64 (citing Glossip v. Gross, --- U.S. ----, 135 S.Ct. 2726, 2731, 192 L.Ed.2d 761 (2015) ). Under Rule 12.4(E), Mr. Irick need only show a likelihood of success-not a substantial likelihood or a guarantee of success. The purpose of this rule is to weed out frivolous claims with no likelihood of success.
Mr. Irick argues that he has a likelihood of success on appeal based on errors in the chancery court's findings of fact, its conclusions of law, and its denial of his motion to amend his pleadings to conform to the *694 evidence. To make the necessary determination under Rule 12.4(E), we have a limited record to review-only the chancery court's order, Mr. Irick's motion to vacate the execution date, the State's response, and Mr. Irick's reply. We lack the pleadings, transcripts of the chancery court proceedings, and the exhibits.
Mr. Irick first asserts that he established at trial that a two-drug protocol (Midazolam and potassium chloride ) was a feasible and readily available alternative and would substantially reduce the risk of severe pain associated with the State's three-drug protocol, as required by Glossip, and that the chancery court erred by not allowing him to amend his pleadings under Tennessee Rule of Civil Procedure 15.02 to conform to the evidence. The State responds that the chancery court did not err in denying Mr. Irick's motion to amend because the two-drug protocol was known or could have been known to Mr. Irick when he filed suit and that the two-drug protocol was not tried by express or implied consent.
More specifically, Mr. Irick claims that two expert witnesses testified that the two-drug protocol would reduce the risk of pain and suffering. He also asserts that the TDOC Commissioner testified that the State could use the two-drug protocol. Mr. Irick argues that as early as April 11, 2018, he gave notice that he would amend his complaint to include additional alternatives depending on the outcome of discovery. Discovery, however, did not end until the week before the trial started. In addition, only four days before trial, the State changed its protocol by eliminating pentobarbital as a single-drug protocol alternative. Mr. Irick contends that, on the same day the State changed the protocol, he gave notice in his trial brief of his intent to elicit evidence regarding the two-drug protocol.
Under Tennessee Rule of Civil Procedure 15.02, when issues not raised by the pleadings are tried by express or implied consent of the parties, the issues are treated as if they had been raised in the pleadings. A party may make a motion to amend to conform to the evidence at any time, even post trial. If a party objects to evidence at trial because it is not within the issues in the pleadings, the court may allow the pleadings to be amended and "shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice that party in maintaining the action or defense upon the merits." Tenn. R. Civ. P. 15.02.
Rule 15.02 aims to place substance over form. Zack Cheek Builders, Inc. v. McLeod , 597 S.W.2d 888, 890 (Tenn. 1980). The relevant consideration is not when the motion is made, but whether the parties actually tried the issue. Id. " 'A party who knowingly acquiesces in the introduction of evidence relating to issues that are beyond the pleadings is in no position to contest a motion to conform.' " Id. at 891 (quoting 6 Wright & Miller, Federal Practice and Procedure § 1493 at 462-63 ). Trial by informed consent can be established when the party opposing the amendment knew or should have known of the evidence on the new issue, did not object to its introduction, and was not prejudiced by its introduction. Id. at 890.
An appellate court would need to review the pleadings, transcripts, and exhibits of the trial to determine what was pleaded, what the witnesses said, whether objections were made, and what evidence was introduced before determining whether the chancery court abused its discretion in denying the motion to amend. There is not a complete record for us to review, and we can only rely on the parties' statements to *695 this Court. Given the unusual speed with which this case proceeded to trial and the State's change in the lethal injection protocol on the eve of trial, it is likely that Mr. Irick and the other inmates did not fully anticipate in their pleadings the evidence that would be introduced at trial. Moreover, we cannot determine what the testimony was and whether the State objected to any testimony regarding the two-drug alternative. Mr. Irick's argument does not appear to be frivolous or totally without merit. There is no guarantee that he will prevail on appeal, but he has shown a likelihood of success.
Next, Mr. Irick argues that he established that pentobarbital is an available alternative that entails a lesser risk of pain. The State contends that he failed to prove this essential requirement.
To support his argument, Mr. Irick submits that "notes and PowerPoint" introduced as part of "Ex. 105" show that "80% [of pharmacies contacted by the State's Drug Procurer] were willing to sell the TDOC pentobarbital." In addition, Mr. Irick argues that he proved pentobarbital is available because Texas and Georgia continue to obtain supplies of pentobarbital for executions.
Without reading the transcript, we do not know what efforts TDOC made to obtain pentobarbital and whether those efforts were reasonable. What we do know is that in the first seven months of this year, Texas executed eight inmates using pentobarbital.[1] Most recently, Christopher Young was executed on July 17, 2018, and Danny Bible was executed on June 27, 2018.[2] Texas has eight more executions set in 2018, all using pentobarbital.[3] Georgia executed Carlton Gary on March 15, 2018, and Robert Butts, Jr. on May 4, 2018, using pentobarbital.[4] Surely, our TDOC should be as resourceful and able as correction officials in Texas and Georgia in obtaining pentobarbital.
Mr. Irick also argues that he established that there is a significant risk that he will experience pain and suffering because of the use of Midazolam instead of sodium thiopental in the three-drug protocol. The State disagrees.
In State v. West, No. M1987-00130-SC-DPE-DD (Tenn. Nov. 29, 2010) (Order), we held that "[p]roper administration of an adequate amount of sodium thiopental is essential to the constitutionality of Tennessee's three-drug protocol," because failure to administer a proper dose of the drug results in a "constitutionally unacceptable risk of suffocation from the administration of pancuronium bromide and pain from the injection of potassium chloride." Baze v. Rees, 553 U.S. 35, 53, 128 S.Ct. 1520, 170 L.Ed.2d 420 (2008). Mr. Irick contends that he proved that Midazolam does not relieve pain and that its administration could cause pulmonary edema and severe pain. In addition, Mr. Irick claims that he proved that inmates in other states where Midazolam has been used showed physical signs of awareness during their executions, including writhing, crying, struggling and choking, even after correction officials had declared they were "unconscious." The chancery court made a specific finding that the inmates' experts "established that [M]idazolam does not elicit strong analgesic effects and the inmate being executed may be able to feel pain from the administration of the second and third drugs."
*696 This Court relies on the decisions in Glossip and Abdur'Rahman v. Bredesen, 181 S.W.3d 292 (Tenn. 2005), to conclude that Mr. Irick did not prove that the use of Midazolam presents an imminent risk of serious illness and needless suffering. The Court's reliance is misplaced for many reasons. To begin with, this is the first time a Midazolam-based protocol has been challenged in Tennessee. No court has previously determined its constitutionality in this state. Second, every case must be decided on its own merits and facts.[5] Cases may present the same issues of law and similar facts, but no two cases are identical, particularly in terms of the evidence introduced by the parties. Third, since 2014 when Glossip was tried, new evidence may have developed that would result in a different ruling. Mr. Irick claims indeed that "the state's expert in Glossip, Dr. Evans who testified here, repudiated key portions of his Glossip testimony that were central to the Supreme Court's holding." He further contends that he presented evidence not considered by other courts that executed inmates "suffered from pulmonary edema that likely aroused them from the inadequate sedation provided by [M]idazolam and left them awake, sensate, and experiencing the sensations of drowning." The State did not respond to any of these assertions. Last, Abdur'Rahman is wholly inapposite because that case did not involve a Midazolam-based protocol.
These unchallenged factual allegations in Mr. Irick's motion and reply to the State's response, pointing to evidence introduced at trial and not properly considered by the chancery court, raise a likelihood that he will succeed on his claim that the use of Midazolam creates a significant risk that he will experience serious and needless pain and suffering during his execution.
III.
Mr. Irick timely challenged the State's revised protocol and has not unduly delayed the proceedings to obtain an advantage. In Tennessee, a party to a civil action has an appeal as of right to the Court of Appeals. Tenn. R. App. P. 3(a). Mr. Irick timely and promptly perfected his appeal as of right on the second business day after the chancery court entered the order dismissing his claim. On that same date, Mr. Irick moved this Court to delay his execution date to allow the expeditious adjudication of his appeal. This Court has the inherent authority to delay Mr. Irick's execution and should do so.[6] Mr. Irick has promptly taken every step necessary to exercise his right to appeal under the Rules of Appellate Procedure. The one obstacle blocking his right to appellate review is his August 9 execution date.
We construe our Rules of Appellate Procedure to secure the "just, speedy, and inexpensive determination of every proceeding *697 on its merits. " Tenn. R. App. P. 1 (emphasis added). For good cause, an appellate court may suspend the requirements of the rules to expedite a decision in any matter on motion of a party or on its own motion. Tenn. R. App. P. 2. It follows then that an appellate court could reasonably expedite the appeal of this case to minimize the time needed for review. All in all, a short delay is fair and proper given the high stakes involved.
The State's interest in finality and closure is a legitimate concern, but not before Mr. Irick obtains appellate review of the chancery court's decision on his challenge to the State's latest method of execution. The harm to Mr. Irick of an unconstitutional execution is irreparable. Yet the harm to the State from briefly delaying the execution until after appellate review is minimal, if any.
The nature of this case counsels against a rush to execution. "[T]he penalty of death is qualitatively different from a sentence of imprisonment, however long." Woodson v. North Carolina, 428 U.S. 280, 305, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976) (Powell, Stevens, and Stewart, JJ., plurality opinion). Mr. Irick, whose life is at stake, should not be denied the right to appellate review to ensure that his execution complies with constitutional requirements.
IV.
In sum, this is a complicated case. It was filed and tried in about five months, but its roots go back some thirty-odd years. The State changed its lethal injection protocol only four days before trial. The trial lasted ten days, during which the chancery court heard the testimony of twenty-three witnesses and reviewed 139 exhibits. All parties were zealously represented by able counsel. The chancery court expeditiously issued a detailed and well-written forty-nine page opinion on the constitutionality of the State's new lethal injection protocol. Mr. Irick's filings in this Court raise important issues that, if resolved in his favor, could merit a reversal of the chancery court's decision. Mr. Irick need not show a guarantee or even a substantial likelihood of success, only a likelihood of success. He has done that. I would grant Mr. Irick's request to delay his execution date until after the conclusion of appellate review.

Death Penalty Information Center (DPIC), Execution List 2018, https://deathpenaltyinfo.org/execution-list-2018.

Id.

DPIC, Executions Scheduled for 2018, https://deathpenaltyinfor.org/ upcoming-executions#year2018.

DPIC, Execution List 2018, https://deathpenaltyinfo.org/execution-list-2018.

See State v. Travis , 622 S.W.2d 529, 532 (Tenn. 1981) ("With all due respect to the good faith and sincere concern of the learned trial judge, each case must be considered on its own facts and merits."); Stringfield v. Hirsch, 94 Tenn. 425, 29 S.W. 609, 613 (1895) ("Each case must stand on its own merits and facts."); State v. Williams , No. 03C01-9303-CR-00072, 1994 WL 413830, at *5 (Tenn. Crim. App. Aug. 3, 1994) (internal citations omitted) ("Each case must be considered on its own merits and depends on its own facts. The fate of each defendant depends on the evidence contained in the record of that case.").

See West v. Schofield, 468 S.W.3d 482, 494 (Tenn. 2015) (declaring the Court's "intent sua sponte to schedule new execution dates"); Coe v. State, 17 S.W.3d 251, 251 (Tenn. 2000) (holding that after "an execution date is initially set, this Court possesses continuing jurisdiction to set a new date should the original date of execution expire as the result of a stay issued by a federal court or other appropriate authority").