IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

January 3, 2018 Session

## STATE OF TENNESSEE v. A.B. PRICE, JR. and VICTOR TYRONE SIMS

### Appeal from the Circuit Court for Henry County
### No. 15680    Donald E. Parish, Judge

_____

### No. W2017-00677-CCA-R3-CD

_____

ALAN E. GLENN, J., dissenting.

The posture of this matter is that, as the Defendant arrived in the trial court to enter his plea of guilty and be placed on probation, the trial court announced to the parties that the court wanted to be "educated" as to the workings of the PSA, to which the Defendant would be subject. As the majority opinion in this matter explains, the practical effect of the PSA is that certain alleged infractions of the probation requirements would not go to the court but, rather, would be handled by a probation officer. Subsequently, a hearing was held in this matter at which a probation officer testified regarding the general workings of the PSA. The Defendant, having not yet pled guilty, was not yet subject to the PSA provisions; and defense counsel had not questioned its constitutionality. One week later, the trial court filed its lengthy and detailed order, finding that the constitutionality of the PSA was ripe for the court's consideration, and concluding that, were the Defendant subject to its provisions, his rights to due process and equal protection of the law would be violated.

The state then appealed this ruling. Although as I understand, the State has not questioned whether this matter is properly before this court, I believe that it is not, and will explain why I believe the path of this matter was not in accord with the rights afforded the parties by the Tennessee Code of Judicial Conduct ("CJC").

Tennessee Supreme Court Rule 10, Section 2.11 provides that "[a] judge shall disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned," setting out then the various considerations. Section (A)(1)(c) of this rule provides, in pertinent part, that disqualification is required if "[t]he judge is a person who has more than a de minimis interest that could be substantially affected by the proceeding . . . ." Since an apparent effect of the PSA would be to reduce the number of alleged probation violation matters reaching trial courts with criminal jurisdiction, I believe that the parties should have had the opportunity to explore whether Tennessee

courts have an "interest [in the PSA] that could be substantially affected" by its application. Although neither of the parties filed a recusal request, Comment [2] to this section provides that "[a] judge is obligated not to hear or decide matters in which disqualification is required, even though a motion to disqualify is not filed." While Comment [3] recognizes the Rule of Necessity, our supreme court, in Hooker v. Haslam, 393 S.W.3d 156 (Tenn. 2012), explained its limited application in declining to apply it, while the Michigan supreme court had done otherwise in Citizens Protecting Michigan's Constitution v. Secretary of State, 755 N.W.2d 147, 149 (2008) in a similar matter, because, unlike Tennessee, Michigan had no process for selecting a special supreme court:

> The circumstances in our state are different than those in Michigan. As indicated, Tennessee has constitutional and statutory provisions which allow the Governor to appoint "special judges" who would have no economic interest in the subject matter of the litigation. While it is arguable that we have no "economic interest" because of the constitutional protections as to compensation set out in article VI, section 7,9 our inclination is to conclude, as did the Michigan Supreme Court, that there exists the appearance of an "economic interest" in our compensation.

Id. at 168.

Further, since this case proceeded from the trial court's wishing to be "educated" about the PSA to next holding that it was unconstitutional, the Defendant was not asked, as far as the record shows, whether he would have preferred to be subject to the PSA procedures rather than returning to court regarding alleged probation violations. I note that the Defendant made no apparent claims that the PSA was unconstitutional until after the trial court had ruled that it was and the State had appealed that decision. In fact, the issues in this matter were framed by the trial court's ruling and not from anything filed by the Defendant in the trial court. For all of these reasons, I believe that the judgment of the trial court must be reversed.

I next will review the State's argument that these matters are not yet ripe for our consideration.

On appeal, the State argues that the Defendants' claims "should have been rejected as unripe and non-justiciable," because they had "violated no condition of probation, and no sanction [had] been imposed and [might] never be if [they complied] with the conditions imposed by the trial court." As I will explain, I agree with the State.

- 2 -

In West v. Schofield, 468 S.W.3d 482 (Tenn. 2015) [hereinafter West II], the plaintiff, Stephen Michael West, and four other inmates sentenced to death, filed a declaratory judgment action, asserting that the new protocol of the TDOC calling for executions to be carried out with a single drug, pentobarbital, rather than the three drugs which had been used previously, was unconstitutional. In its review of the appeal, our supreme court noted that executions were to be carried out by lethal injection. Id. at 485. The alternative method was electrocution, which would be used if lethal injection were held to be unconstitutional, or the commissioner of corrections certified to the governor that one or more of the ingredients essential to carrying out a sentence of death by lethal injection, through no fault of the TDOC, to be unavailable. Id. at 486-87.

Previously, in related litigation, the court had explained the need for the justiciability as to inmates' claims that the protocol for lethal injections was unconstitutional:

> For a controversy to be justiciable, *a real question rather than a theoretical one must be presented* and a legally protectable interest must be at stake. Cummings v. Beeler, 189 Tenn. 151, 223 S.W.2d 913, 915 (1949). *If the controversy depends upon a future or contingent event, or involves a theoretical or hypothetical state of facts, the controversy is not justiciable*. Story v. Walker, 218 Tenn. 605, 404 S.W.2d 803, 804 (1966). If the rule were otherwise, the "courts might well be projected into the limitless field of advisory opinions."

West v. Schofield, 460 S.W.3d 113, 130 (Tenn. 2015) [hereinafter West I] (emphasis in original).

Further, the court outlined the process utilized to ascertain whether a dispute was yet justiciable:

> In determining whether a particular case is ripe, courts typically engage in a two-part analysis, evaluating "[1] the fitness of the issues for judicial decision and [2] the hardship to the parties of withholding court consideration." Abbott Labs., 387 U.S. at 149, 87 S. Ct. 1507; see also B & B Enters., 318 S.W.3d at 848; Warshak v. United States, 532 F.3d 521, 525 (6th Cir. 2008) (en banc) (describing the two-part inquiry as: "(1) [I]s the claim fit for judicial decision in the sense that it arises in a concrete factual context and concerns a dispute that is likely to come to pass? [A]nd, (2) what is the hardship to the parties of withholding court consideration?" (citations and internal quotation marks omitted)).

West II, 468 S.W.3d at 491.

The court explained why the inmates' claims were not yet ripe for adjudication:

No allegation of the amended complaint, or any other portion of the record on appeal, demonstrates that the Inmates are presently subject to execution by electrocution. Moreover, the plain language of the CPEA establishes that none of the Inmates will ever become subject to execution by electrocution unless one of two statutory contingencies actually occurs. Indeed, the CPEA authorizes the use of electrocution as a method of execution, if, and only if, one of the following contingencies occurs:

(1) Lethal injection is held to be unconstitutional by a court of competent jurisdiction in the manner described in subsection (d); or

(2) The commissioner of correction certifies to the governor that one (1) or more of the ingredients essential to carrying out a sentence of death by lethal injection is unavailable through no fault of the department.

Tenn. Code Ann. § 40-23-114(e).

Id.

These contingencies were fatal to the claims of the inmates regarding the method of execution:

[T]he Electrocution Causes of Action are not ripe for judicial decision because they involve a method of execution that does not now presently apply to the Inmates and will never apply to them unless one of two statutory contingencies occurs in the future.

Id. at 492.

Similarly, in the present appeal, I also conclude that the matter is not yet fit for adjudication, because, as the state asserts as to each, "[t]he defendant has violated no condition of probation, and no sanction has been imposed and may never be if he complies with the conditions imposed by the trial court."

Next, the court in West II examined whether the parties would suffer a hardship if the complaint of the inmates was not heard at that time:

- 4 -

The second part of the ripeness analysis requires consideration of whether withholding adjudication of the Electrocution Causes of Action at this time will impose any meaningful hardship on the parties. "The prototypical case of hardship comes from the claimant who faces a choice between immediately complying with a burdensome law or 'risk[ing] serious criminal and civil penalties.'" Warshak, 532 F.3d at 526 (quoting Abbott Labs., 387 U.S. at 153, 87 S. Ct. 1507). This prototypical hardship is not present in this litigation. The CPEA does not force the Inmates to make any choice. In fact, as already discussed, the CPEA provides for carrying out executions for electrocution if, and only if, one of two statutory contingencies actually occurs. The CPEA does not direct the Inmates "to engage in, or to refrain from, any conduct."

West II, 468 S.W.3d at 492.

As did our supreme court in West II, I believe that the Defendants will undergo no hardship by our court's not reviewing the constitutionality of the PSA at this time. The imposition of sanctions will not occur in the absence of a future probation violation.

Since this matter is not yet ripe for our consideration, we cannot not review the trial court's additional decisions that the PSA violates the rights to due process and equal protection of the law.

## CONCLUSION

If one branch of government invalidates the actions of another branch, concluding that the powers and authority of the reviewing branch have been impinged upon, I believe it to an absolute necessity that the reviewing branch scrupulously and fairly follows its procedures in doing so. Since, in my opinion, that was not done here, I would reverse the judgment of the trial court.

_____
ALAN E. GLENN, JUDGE