IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

## HENRY LEE JONES v. STATE OF TENNESSEE

**Criminal Court for Shelby County**
**No. 03-06997**

_____

**No. W2025-01838-CCA-R10-PD**

_____

### ORDER

This matter is before the Court upon the application of the Petitioner, Henry Lee Jones, for an extraordinary appeal pursuant to Tennessee Rule of Appellate Procedure 10. The Petitioner seeks review of the trial court's order denying his motion to disqualify the Attorney General's Office from representing the State in his capital post-conviction proceeding. The Petitioner raises numerous constitutional and statutory challenges to 2023 Tenn. Pub. Acts ch. 182 ("the Act"), which gives the Attorney General "exclusive control over the state's defense of the request for collateral review" in capital cases. The State has responded in opposition to the application, arguing that the Petitioner lacks standing to challenge the Act and, alternatively, that the Petitioner has failed to establish that this case merits extraordinary review. For the reasons set forth below, the Petitioner's application is hereby denied.

Background

In August 2003, the Petitioner robbed and murdered an elderly couple in their home in Memphis. *See State v. Jones*, 568 S.W.3d 101, 110 (Tenn. 2019). In 2009, the Petitioner was convicted of two counts of first degree premeditated murder and two counts of first degree felony murder, and the jury imposed the death sentence for each count. *Id*. at 122. However, the Tennessee Supreme Court reversed and remanded the case for a new trial, holding that the trial court improperly admitted evidence of another murder committed by the Petitioner in Florida. *See State v. Jones*, 450 S.W.3d 866 (Tenn. 2014). At the retrial, the Petitioner was again convicted and sentenced to death. *Jones*, 568 S.W.3d at 124. The Tennessee Supreme Court affirmed the Petitioner's convictions and sentences, and the United States Supreme Court denied certiorari. *Id*. at 143; *Jones v. Tennessee*, 589 U.S. 980 (2019).

1

In December 2019, the Petitioner filed a timely petition for post-conviction relief. In September 2020, the post-conviction court removed the Office of the Post-Conviction Defender as the Petitioner's counsel for failing to timely file an amended petition. The Petitioner sought and was granted an extraordinary appeal in this Court. *Jones v. State*, No. W2020-01347-CCA-R10-PD, 2022 WL 601074 (Tenn. Crim. App. Mar. 1, 2022). This Court reversed the decision to remove counsel and remanded the case for further proceedings. *Id.*

In April 2023, the General Assembly passed the Act, amending several statutes to designate the Attorney General as the representative of the State in capital collateral review proceedings in the trial court. *See* 2023 Tenn. Pub. Acts ch. 182. Specifically, the Act added the following subsection to Tennessee Code Annotated § 40-30-114 of the Post-Conviction Procedure Act:

> (c)(1) In cases where a defendant has been sentenced to death and is seeking collateral review of a conviction or sentence, the attorney general and reporter has exclusive control over the state's defense of the request for collateral review and has all of the authority and discretion that the district attorney general would have in non-capital cases as well as any additional authority provided by law. The attorney general and reporter is not bound by any stipulations, concessions, or other agreements made by the district attorney general related to a request for collateral review.

2023 Tenn. Pub. Acts ch. 182, § 1. The Act specified that the term collateral review "does not mean the trial of an original petition for post-conviction relief" for any defendant who "has been sentenced to death after March 1, 2023[.]" T.C.A. § 40-30-114(c)(4)(B).

Both the Petitioner and the Shelby County District Attorney General filed motions to disqualify the Attorney General's Office from representing the State on the basis that the Act was unconstitutional.[1] Specifically, the Petitioner raised the following constitutional challenges to the Act: 1) the Act violated his right to equal protection under both the state and federal constitutions by arbitrarily classifying original post-conviction petitioners by sentencing date; 2) the Act violated Article II, § 17 of the Tennessee Constitution because the caption of the bill was too broad to provide adequate notice of the proposed legislation; 3) the Act violated Article VI, § 5 of the Tennessee Constitution by divesting the District Attorney General of his authority to represent the State in trial courts exercising criminal jurisdiction; and 4) the Act violated Article VI, § 5 of the Tennessee Constitution by usurping judicial authority to appoint a prosecutor pro tempore.

---

[1] The Shelby County District Attorney General did not join in the Petitioner's Rule 10 application or file a separate Rule 10 application in this Court. Accordingly, this order will not address any separate issues presented by or related to the District Attorney General.

Additionally, the Petitioner argued that the plain language of the Act did not permit the Attorney General to "represent" the State during the post-conviction hearing; instead, the Attorney General's role was limited to exercising supervisory control over the State's defenses and filing a response to the petition. The Attorney General filed a response arguing that the Petitioner lacked standing to challenge the constitutionality of the Act and that the Act otherwise passed constitutional muster.

The post-conviction court stayed proceedings in this case pending the outcome of the interlocutory appeal in *McKay v. State*, which raised similar constitutional challenges. On October 4, 2024, this Court issued an opinion holding that the Act "does not violate Article VI, § 5 [of the Tennessee Constitution] by transferring representation of the State in trial-level capital collateral review proceedings from the locally elected district attorney to the Attorney General." *McKay v. State*, No. W2023-01207-CCA-R9-CO, 2024 WL 4404318, at *12 (Tenn. Crim. App. Oct. 4, 2024).[2] The Tennessee Supreme Court denied McKay's application for permission to appeal but vacated the part of this Court's opinion declining to address the issue of standing because it had not been adequately preserved and presented by the parties. The Tennessee Supreme Court held that "[c]onstitutional standing is an irreducible and indispensable jurisdictional requirement in public rights cases that courts must always consider." *McKay v. State*, 706 S.W.3d. 338, 340 (cleaned up). The court concluded that the Shelby County District Attorney had standing to challenge the constitutionality of the Act but declined to consider whether McKay also had standing. *Id*. at 341. The court expressly "left undisturbed" this Court's "holding that section 40-30-114(c)(1) does not violate Article VI, Section 5" of the Tennessee Constitution. *Id*.

On July 11, 2025, the post-conviction court held a hearing on the Petitioner's and the District Attorney's remaining challenges to the Act. On August 13, 2025, the post-conviction court entered an order denying the disqualification motions. The post-conviction court found that the Petitioner had standing to challenge the Act because he "is a member of the targeted group affected by the Act."[3] The post-conviction court disagreed with the Attorney General's contention that the Petitioner had to show how the identity of the State's representative would impact the resolution of his post-conviction proceedings in order to establish an injury. With respect to the Petitioner's equal protection claim, the post-conviction court agreed that the Act "create[d] two classes of capital post-conviction petitioners" based upon the date of sentencing. The post-conviction court found that the

---

[2] Although both the trial court and this Court certified the Article II, § 17 issue regarding the bill's caption, that issue was abandoned by the parties during briefing and argument. *See McKay*, 2024 WL 4404318, at *2 n.2.

[3] There are only eight capital defendants, including the Petitioner, who have or will have original post-conviction proceedings subject to the terms of the Act. In total, the Act applies to approximately twenty capital defendants currently seeking some form of collateral review in the state trial courts.

3

Attorney General's explanation about efficiency, though reasonable, did not rationally relate to the date-based classification. However, the post-conviction court concluded that the Petitioner had failed to show that the Act had a discriminatory effect or purpose and denied the equal protection challenge. Alternatively, the post-conviction court found that under the doctrine of elision, the Legislature would have still passed the Act even with the offending date-based classification severed, thus giving the Attorney General's office control of all capital post-conviction proceedings.

The post-conviction court found that the Act's designation of the Attorney General as the State's representative in capital collateral proceedings "d[id] not equate" to the appointment of an attorney pro tempore in violation of Article VI, § 5. Although the post-conviction court found that "the Act arguably removes the judicial check on abusive prosecutorial authority" because the power to appoint an attorney pro tempore does not apply to the Attorney General, it concluded that this constitutional power does not extend to collateral proceedings and that the replacement of an attorney would be a function of statute. The post-conviction court found that the Act did not run afoul of Article II, § 17 because its subject (capital collateral review proceedings) generally related to its caption (criminal justice). The post-conviction court noted that neither an overbroad caption nor "[a] wholesale change from the original bill" is objectionable under Article II, § 17 as long as the changes are within the scope of the original caption. With regard to the Petitioner's statutory challenge, the post-conviction court rejected the Petitioner's "unnatural reading of the statute," concluding that "[t]he designation of the [Attorney General] as the State's representative is subsumed in the natural and ordinary meaning of the term 'exclusive control.'"

On September 16, 2025, the Petitioner filed a motion for permission to seek an interlocutory appeal pursuant to Tennessee Rule of Appellate Procedure 9. The Petitioner asserted that interlocutory review was routinely granted on issues related to the disqualification of counsel. The Petitioner argued that interlocutory review would prevent protracted and expensive relitigation of the post-conviction petition and would prevent irreparable injury both to himself and the State if the trial court were to be reversed on appeal after final judgment. The Petitioner also argued that because these same or similar constitutional issues were being raised in multiple cases across the State, interlocutory review was necessary to develop a uniform body of law and to prevent trial courts from potentially issuing inconsistent orders. The Attorney General filed a response in opposition, arguing that review after final judgment would not be ineffective or cause irreparable harm. The Attorney General noted that since *McKay*, other trial courts had consistently held that the Act was constitutional and that disqualification was not warranted. Alternatively, the Attorney General requested that if the post-conviction court granted an interlocutory appeal, it should also certify the issue of the Petitioner's standing.

On October 21, 2025, the post-conviction court entered an order denying the Rule

4

9 motion.   The post-conviction court found that the Petitioner would not suffer irreparable injury and that he could seek review of these issues in an appeal as of right following a final order.   The post-conviction court found that an interlocutory appeal would not reduce the duration and expense of litigation.   Finally, given similar rulings issued in other capital post-conviction cases, the post-conviction court found that there was not a need to develop a uniform body of law.   *See* Tenn. R. App. P. 9(a)(1)-(3).

On November 19, 2025, the Petitioner filed in this Court an application for an extraordinary appeal pursuant to Tennessee Rule of Appellate Procedure 10.   The Petitioner argues that the post-conviction court committed a plain and palpable abuse of discretion in denying each of the issues raised by the Petitioner.   Specifically, the Petitioner argues that the post-conviction court improperly required the Petitioner to establish that the Act had a discriminatory effect or purpose after concluding that it failed the equal protection rational-basis test.   The Petitioner contends that the post-conviction court's alternative holding improperly applied the "disfavored" doctrine of elision.   The Petitioner asserts that the post-conviction court's denial of his Article II, § 17 claim "essentially sets no limits on the breadth of a bill's caption."   By denying his claim that the Act violates the pro tempore clause of Article VI, § 5, the Petitioner contends that the post-conviction court's ruling "would allow for a due process violation to occur should a conflicted prosecutor be designated by the Attorney General."[4]   The Petitioner also argues that the post-conviction court erred by rejecting his statutory interpretation claim.   Finally, the Petitioner argues that the post-conviction court's ruling on each of these issues is "tantamount to denying [the Petitioner] his day in court and will cause him to lose a right or interest [that] will never be recaptured."

The State filed a response in opposition, arguing that the Petitioner lacks standing to challenge the Act as a jurisdictional prerequisite to seeking an extraordinary appeal.   *See McKay*, 706 S.W.3d. at 340.   Alternatively, the State argues that the Petitioner failed to "meet the high bar for extraordinary review."   The State contends that the post-conviction court did not depart from the accepted and usual course of judicial proceedings and appropriately applied the "strong presumption that acts passed by the legislature are constitutional."   *See Lynch v. City of Jellico*, 205 S.W.3d 384, 390 (Tenn. 2006).

Analysis

---

[4] The possibility that the Act would create a due process violation if there were a conflict of interest was not presented to and ruled upon by the post-conviction court nor is it ripe for consideration by this Court.   *See State v. Price*, 579 S.W.3d 332, 338 (Tenn. 2019) ("An issue is not fit for judicial decision if it is based 'on hypothetical and contingent future events that may never occur.'"); *State v. Hardison*, 680 S.W.3d 282, 309 (Tenn. Crim. App. 2023) ("[A] party may not take one position regarding an issue in the trial court, change his strategy or position in mid-stream, and advocate a different ground or reason on appeal.").

5

Rule 10 provides for the granting of an extraordinary appeal in the discretion of this Court alone where the trial court has "so far departed from the accepted and usual course of judicial proceedings as to require immediate review" or "if necessary for complete determination of the action on appeal." Tenn. R. App. P. 10(a). "The circumstances in which review is available . . . are very narrowly circumscribed to those situations in which the trial court . . . has acted in an arbitrary fashion, or as may be necessary to permit complete appellate review on a later appeal." Tenn. R. App. P. 10, Adv. Comm. Cmt. As the Tennessee Supreme Court has explained:

> An appellate court should grant a Rule 10 extraordinary appeal only when the challenged ruling represents a fundamental illegality, fails to proceed according to the essential requirements of the law, is tantamount to the denial of a party's day in court, is without legal authority, is a plain or palpable abuse of discretion, or results in either party losing a right to interest that may never be recaptured.

*Gilbert v. Wessels*, 458 S.W.3d 895, 898 (Tenn. 2014) (citing *State v. McKim*, 215 S.W.3d 781, 791 (Tenn. 2007); *State v. Willoughby*, 594 S.W.2d 388, 392 (Tenn. 1980)). "Those alleged errors not rising to the level required by Rule 10 can be reviewed in the normal course of an appeal after a final judgment has been entered." *Id.* at 899.

Like an interlocutory appeal, an extraordinary appeal "is an exception to the general rule that requires a final judgment before a party may appeal as of right." *State v. Gilly*, 173 S.W.3d 1, 5 (Tenn. 2005). Such appeals are disfavored, particularly in criminal cases, because "interlocutory review of pretrial rulings can create piecemeal appellate litigation and the 'encouragement of delay [that] is fatal to the vindications of the criminal law.'" *Id*. (quoting *United States v. MacDonald*, 435 U.S. 850, 853-54 (1978)); *see also Reid v. State*, 197 S.W.3d 694, 699 (Tenn. 2006). Generally, when a trial court has denied a request for a Rule 9 interlocutory appeal, this Court must respect that discretionary decision and refrain from granting an application for a Rule 10 extraordinary appeal "unless the trial court's alleged error qualifies for immediate review under the specific criteria indicated by Rule 10." *Gilbert*, 458 S.W.3d at 899. "Unlike Rule 9 appeals, Rule 10 appeals are reserved only for *extraordinary* departures from the accepted and usual course of judicial proceedings." *Id.* at 898 (emphasis in original).

In this case, the post-conviction court did not depart from the accepted and usual course of judicial proceedings and did not act in an arbitrary fashion. The post-conviction court allowed the parties to file ample briefing on the issues, conducted a hearing to allow counsel to present oral arguments, and issued a thorough order analyzing each issue presented by the parties and citing relevant case law. Just because the Petitioner disagrees with the post-conviction court's analysis does not mean that the court committed a plain and palpable abuse of discretion. Even an alleged erroneous legal ruling, in and of itself,

does not necessarily warrant the granting of an extraordinary appeal. However, we do not reach the issue of whether the trial court's ruling was correct. Rather, we conclude that the trial court's ruling does not rise to the level contemplated by the high standards of a Rule 10 extraordinary appeal. The Petitioner will not be denied his day in appellate court as each of these issues will be reviewable in an appeal as of right following a final judgment.[5] If the Petitioner is granted post-conviction relief, these issues become moot.

Based on the foregoing, we conclude that the Petitioner has failed to carry his burden of showing that the trial court so far departed from the accepted and usual course of judicial proceedings as to require immediate appellate review. Accordingly, the Petitioner's application for an extraordinary appeal pursuant to Rule 10 is hereby DENIED. Because it appears that the Petitioner is indigent, costs associated with this proceeding shall be taxed to the State.

s/ Robert W. Wedemeyer, Presiding Judge
s/ Camille R. McMullen, Judge
s/ Matthew J. Wilson, Judge

---

[5] We acknowledge the State's position that this Court should deny the Petitioner's application because he lacks standing to challenge the constitutionality of the Act, which is a jurisdictional prerequisite. *See McKay*, 706 S.W.3d at 340. However, because this Court is declining to accept discretionary jurisdiction in this case, we do not wish to pretermit the parties from fully litigating the standing issue in a later appeal.