# IN THE SUPREME COURT OF TENNESSEE
## AT JACKSON
### April 4, 2019 Session

## STATE OF TENNESSEE v. A. B. PRICE, JR.
### AND VICTOR SIMS

**Appeal by Permission from the Court of Criminal Appeals**
**Circuit Court for Henry County**
**Nos. 40CC1-2017-CR-15680, 40CC1-2016-CR-15664    Donald E. Parish, Judge**

_____

### No. W2017-00677-SC-R11-CD

_____

In early January 2017, Defendant A. B. Price, Jr., attempted to plead nolo contendere to two counts of sexual battery, and Defendant Victor Sims attempted to plead guilty to three counts of aggravated assault.[1]  Both Defendants had reached plea bargains with the State, and each of the pleas included a term of probation.  The trial court declined to accept the pleas and requested the parties to return for a later hearing to present proof and argument regarding the constitutionality of certain portions of the Public Safety Act of 2016 ("the PSA"), which has the practical effect of authorizing the Tennessee Department of Correction ("DOC") to address at least some probation violations, a role up to this point reserved exclusively to trial courts.[2]  After the hearing, the trial court ruled portions of the PSA facially unconstitutional on grounds of separation of powers, due process, and equal protection.  The trial court subsequently accepted the Defendants' pleas and inserted in each judgment the following special condition:  "The probated portion of the Defendant's sentence is not subject to the Public Safety Act; rather, the Defendant shall be subject to the rules and regulations governing probation applicable through pre-existing law (law in effect prior to January 1, 2017)."  The State appealed, and the Court of Criminal Appeals affirmed the trial court's judgments.  We granted the State's application for permission to appeal.  We hold that the constitutionality of the PSA provisions at issue was not ripe for consideration by the trial court.  Accordingly, we reverse the judgments of the trial court and the Court of Criminal Appeals.  We remand this matter to the trial court for further proceedings consistent with this opinion.

_____

[1] The Defendants' cases are unrelated other than having been consolidated by the trial court for consideration of the constitutionality of statutes applicable to each Defendant's sentence and for the purposes of appeal.

[2] The portions of the PSA at issue are codified at Tennessee Code Annotated sections 40-28-301 through -306 (2018) and took effect on January 1, 2017.  See 2016 Tenn. Pub. Acts ch. 906, § 17.

**Tenn. R. App. P. 11 Appeal by Permission;**
**Judgment of the Court of Criminal Appeals Reversed;**
**Remanded to the Trial Court**

JEFFREY S. BIVINS, C.J., delivered the opinion of the Court, in which CORNELIA A. CLARK, SHARON G. LEE, HOLLY KIRBY, and ROGER A. PAGE, JJ., joined.

Herbert H. Slatery III, Attorney General and Reporter; Andrée S. Blumstein, Solicitor General; Jonathan David Shaub, Assistant Solicitor General; Matthew F. Stowe, District Attorney General; and Paul Hessing, Assistant District Attorney General, for the appellant, the State of Tennessee.

Robert W. Hawley, Paris, Tennessee, for the appellee, A. B. Price.

J. Neil Thompson, Huntingdon, Tennessee, for the appellee, Victor Sims.

## OPINION

### Factual and Procedural Background

Defendant A. B. Price, Jr., was charged with two counts of sexual battery, each offense alleged to have occurred in the spring of 2015. Defendant Price and the State reached a plea bargain calling for Defendant Price to plead nolo contendere to both charges with consecutive sentences of five years to be served on supervised probation.

Defendant Victor Sims was charged with three counts of attempt to commit first degree murder, all offenses alleged to have occurred on or about July 8, 2016. Defendant Sims and the State reached a plea bargain calling for Defendant Sims to plead guilty to three counts of aggravated assault with concurrent sentences of eight years, suspended to supervised probation after service of one year in confinement.

Both Defendants sought to enter their negotiated pleas in early January 2017. Before accepting the pleas, the trial court, *sua sponte*, expressed concern about the provisions of the PSA that became applicable on January 1, 2017, and that could impact the administration of the probated portions of the Defendants' sentences. Apparently without any request from either party, the trial court requested the parties to return at a later date to offer proof and argument regarding potential constitutional issues with the PSA including whether the PSA violated the separation of powers doctrine and whether it violated the Defendants' due process and equal protection rights.

On February 10, 2017, the trial court heard testimony from a probation officer based in Henry County and also heard argument from the prosecutor, the attorney representing Defendant Price, and the attorney representing Defendant Sims. Counsel for

the Defendants both argued that the provisions of the PSA calling for the DOC to impose graduated sanctions on probationers committing certain violations were facially unconstitutional.[3] The prosecutor disagreed. On February 16, 2017, only six days after the hearing, the trial court filed a forty-four page document titled "Conclusions of Law and Order" in which it concluded that provisions of the PSA applicable to probation violations were facially unconstitutional. The trial court's order included the following:

> The decision reached in these cases will leave in effect the statutory process shared by judges and probation officers for the management of alleged violations of probation which pre-existed January 1, 2017.

> Judgments entered in these cases and in future similar cases shall incorporate the holdings herein by reference as a special condition, pending appellate review.

On March 13, 2017, the trial court held plea hearings on the Defendants' cases and accepted the negotiated pleas. On each of the Defendants' respective judgment orders, the trial court included as a special condition the following: "The probated portion of the Defendant's sentence is not subject to the Public Safety Act; rather, the Defendant shall be subject to the rules and regulations governing probation applicable through pre-existing law (law in effect prior to January 1, 2017)."

The State appealed on the basis of the special condition and the underlying determination by the trial court that the PSA was, at least in part, facially unconstitutional. On review, the Court of Criminal Appeals affirmed the trial court's judgments, with one judge dissenting. State v. Price, No. W2017-00677-CCA-R3-CD, 2018 WL 3934213, at *17-18 (Tenn. Crim. App. Aug. 14, 2018), perm. app. granted (Tenn. Dec. 5, 2018). We granted the State's application for permission to appeal.

**Standard of Review**

Because we are considering only questions of law in this appeal, our review is de novo with no presumption of correctness afforded to the conclusions reached below. See State v. Daniel, 552 S.W.3d 832, 835 (Tenn. 2018).

---

[3] Defendant Sims states in his brief to this Court that he "has changed his position and does not contest the arguments of the State of Tennessee relative to the constitutionality of the Public Safety Act of 2016" and that he "does not contest the State of Tennessee's argument that the constitutional challenge to the PSA is not justiciable based on the ripeness doctrine." At oral argument, counsel for Defendant Sims took no position regarding the PSA.

## Analysis

### *Probation and the PSA*

Prior to the PSA, a probation officer confronted with a probationer who was violating the terms of her probation could seek a probation violation warrant from a judge and then prosecute the warrant before a judge in an evidentiary hearing. The probationer was entitled to contest the allegations and was entitled to be represented by counsel. If, based upon the preponderance of the evidence, the trial court concluded that the probationer had violated the conditions of her probation, the trial court was authorized to determine the appropriate remedy, up to and including revoking the probationer's suspended sentence and ordering the probationer to complete all or a portion of her remaining sentence in confinement. In short, both the determination of probation violations and the imposition of punishments for established violations were left to the trial court. If the trial court revoked the probationer's probation, the probationer had the right to appeal to the Court of Criminal Appeals. See generally Tenn. Code Ann. § 40-35-311 (2014 & Supp. 2018).

Effective January 1, 2017, the PSA set forth an alternative methodology for evaluating and punishing certain probation violations. Specifically, Tennessee Code Annotated section 40-28-303 provides as follows:

> (a) The [DOC] shall adopt a single system of graduated sanctions for violations of the conditions of [probation]. The system shall set forth a menu of presumptive sanctions for the most common types of [probation] violations, including, but not limited to: failure to report; failure to pay fines and fees; failure to participate in a required program or service; failure to complete community service; and failure to refrain from the use of alcohol or controlled substances. The system of sanctions shall take into account factors such as the severity of the current violation, the supervised individual's previous criminal record, the number and severity of any previous supervision violations, the supervised individual's assessed risk level, and the extent to which graduated sanctions were imposed for previous violations. The system shall also define positive reinforcements that supervised individuals will receive for compliance with conditions of [probation]. The system shall clearly specify as to each type of sanction whether the supervised individual has the option to object and seek administrative review of the sanction.

> (b) The [DOC] shall establish by policy an administrative process to review and approve or reject, prior to imposition, graduated sanctions that deviate from those prescribed.

(c) The [DOC] shall establish by policy an administrative process to review graduated sanctions contested by supervised individuals under [Tennessee Code Annotated section] 40-28-305. The review shall be conducted by the chief supervision officer, who shall be impartial and trained to hear cases regarding graduated sanctions for violations of supervision conditions.

(d) The [DOC] shall establish and maintain a program of initial and ongoing training regarding the system of graduated sanctions for probation and parole officers.

Tenn. Code Ann. § 40-28-303 (2018).

Tennessee Code Annotated section 40-28-305, referred to in section -303, provides as follows:

(a) Notwithstanding any rule or law to the contrary, the [DOC] *may* impose graduated sanctions.

(b) A probation and parole officer intending to impose a graduated sanction shall issue to the supervised individual a notice of the intended sanction. The notice shall inform the supervised individual of the violation or violations alleged, the date or dates of the violation or violations, and the graduated sanction to be imposed.

(c) The imposition of a graduated sanction or sanctions by a probation and parole officer must comport with the system of graduated sanctions adopted by the [DOC] under [Tennessee Code Annotated section] 40-28-303. Upon receipt of the notice, the supervised individual shall immediately accept the sanction or, if permitted under the system of graduated sanctions, object to the sanction or sanctions proposed by the probation and parole officer. The failure of the supervised individual to comply with a sanction shall constitute a violation of probation . . . . If the supervised individual objects to the imposition of the sanction or sanctions, when permitted by the system of graduated sanctions, the individual is entitled to an administrative review to be conducted by the department within five (5) days of the issuance of the notice. If the [DOC] affirms the recommendation contained in the notice, the sanction or sanctions shall become effective immediately.

(d)(1) A notice of a graduated sanction may not be issued for any violation of probation . . . that could warrant an additional, separate felony charge or Class A misdemeanor charge.

(2) Notwithstanding subdivision (d)(1), a notice of a graduated sanction may be issued for a positive drug test.

(e) Upon successful completion of a graduated sanction or sanctions, a court shall not revoke the term of [probation] or impose additional sanctions for the same violation. Notwithstanding this subsection (e), a court may consider an individual's supervision and sanctions history when adjudicating subsequent violations.

(f) The [DOC] shall regularly provide notice of sanctions imposed upon probationers to the sentencing court and the prosecutor's office for each jurisdiction.

(g) If a probation and parole officer imposes a graduated sanction, the officer shall:

(1) Deliver a copy of the sanction to the [probationer]; and

(2) Note the date of delivery of the copy in the [probationer's] file.

Tenn. Code Ann. § 40-28-305 (2018) (emphasis added).

Significantly, the system of graduated sanctions does not include the revocation of a probationer's suspended sentence. That authority remains within the exclusive jurisdiction of the trial court. Rather, graduated sanctions include

any of a wide range of non-prison offender accountability measures and programs, including, but not limited to, electronic supervision tools; drug and alcohol testing or monitoring; day or evening reporting centers; rehabilitative interventions such as substance abuse or mental health treatment; reporting requirements to probation and parole officers; community service or work crews; and residential treatment facilities[.]

Tenn. Code Ann. § 40-28-301(4) (2018).

The PSA also provides that,

[f]or individuals placed on supervised probation, the judge of the court having jurisdiction over the case shall determine the conditions of [probation], which shall include as a condition that the [DOC] supervising the individual *may*, in accordance with [Tennessee Code Annotated section]

6

40-28-305, impose graduated sanctions adopted by the [DOC] for *violations* of the conditions of [probation].

Tenn. Code Ann. § 40-28-304 (2018) (emphases added).

In short, the PSA authorizes the DOC to address at least some probation violations, a role heretofore reserved exclusively to trial courts. Moreover, probationers contesting sanctions imposed by the DOC are constrained to administrative proceedings (at most) rather than evidentiary hearings before a trial court.

We emphasize that at the time the trial court issued its ruling regarding the PSA's constitutionality, neither Defendant had been accused of violating a condition of his probation nor subjected to a sanction imposed by the DOC for a probation violation. Indeed, neither Defendant had even been sentenced to probation as of the time the trial court decided to declare portions of the PSA facially unconstitutional.

*Justiciability*

Tennessee courts are to decide only "legal controversies." West v. Schofield, 468 S.W.3d 482, 490 (Tenn. 2015) (quoting Norma Faye Pyles Lynch Family Purpose LLC v. Putnam Cnty., 301 S.W.3d 196, 203 (Tenn. 2009)). "[A] legal controversy exists 'when the disputed issue is real and existing, and not theoretical or abstract, and when the dispute is between parties with real and adverse interests.'" Id. (quoting Putnam Cnty., 301 S.W.3d at 203). As we explained in West, "[t]o determine whether a particular case involves a legal controversy, Tennessee courts use justiciability doctrines that 'mirror the justiciability doctrines employed by the United States Supreme Court and the federal courts.'" Id. (quoting Putnam Cnty., 301 S.W.3d at 203). One of those doctrines is ripeness. Id.

The justiciability doctrine of ripeness "requires a court to answer the question of 'whether the dispute has matured to the point that it warrants a judicial decision.'" Id. (quoting B & B Enters. of Wilson Cnty. v. City of Lebanon, 318 S.W.3d 839, 848 (Tenn. 2010)). Thus, "ripeness is peculiarly a question of timing." Id. (quoting Reg'l Rail Reorganization Act Cases, 419 U.S. 102, 140 (1974)). As we explained in West, the basic rationale of the ripeness doctrine "is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements . . . ." Id. at 490-91 (quoting Abbott Labs. v. Gardner, 387 U.S. 136, 148 (1967)).

Courts should engage in a two-pronged analysis in determining whether a particular case is ripe for review. Id. at 491. The first prong is "the fitness of the issues for judicial decision." Id. (quoting Abbott Labs., 387 U.S. at 149). An issue is not fit for judicial decision if it is based "on hypothetical and contingent future events that may never occur." Id. (citing Texas v. United States, 523 U.S. 296, 300 (1998)). Rather, the

7

issue must be "based on an existing legal controversy." Id. (citing Texas, 523 U.S. at 300).

The second prong of the ripeness analysis takes into account "whether withholding adjudication . . . will impose any meaningful hardship on the parties." Id. at 492. "The prototypical case of hardship comes from the claimant who faces a choice between immediately complying with a burdensome law or risk[ing] serious criminal and civil penalties." Id. (quoting Warshak v. United States, 532 F.3d 521, 526 (6th Cir. 2008)) (internal quotation marks omitted). A court should decline to rule "where the refusal to act will not prevent the parties from raising the issue at a more appropriate time." B & B Enters., 318 S.W.3d at 849 (quoting AmSouth Erectors, LLC v. Skaggs Iron Works, Inc., No. W2002-01944-COA-R3-CV, 2003 WL 21878540, at *6 (Tenn. Ct. App. Aug. 5, 2003)).

During the course of the February 10 hearing before the trial court in this matter, the judge inquired of the parties whether the constitutionality of the PSA was ripe for adjudication. All parties agreed that it was,[4] and the trial court ruled that both prongs of the ripeness doctrine had been satisfied.

### The First Prong

In his order, the trial judge addressed the first prong of the ripeness doctrine as follows:

These are real cases in which a significant question exists as to whether the determination of probation violation matters is exclusively to be made by the judiciary or may be delegated to the executive branch. The constitutional separation of powers question exists now, as it has at every moment on or after January 1, 2017. The [PSA] requires, in felony criminal cases involving a sentence of supervised probation, including the two at bar, that the judge insert a provision within a judgment which transfers the authority to decide common probation violation issues to the executive branch. T[enn.] C[ode] A[nn]. § 40-28-304. The resulting separation of powers question is not hypothetical nor does it depend upon Mr. Sims or Mr. Price being accused of a violation. The question was ripe and fit for resolution the moment an actual person became subject to that provision of the [PSA].

---

[4] While the Defendants argued to the Court of Criminal Appeals that the State thereby waived its right to contest justiciability, the Defendants no longer make this argument. In any event, as did the Court of Criminal Appeals, we choose to address the issue of justiciability on the merits.

The Court of Criminal Appeals agreed that the impact of section -304 satisfied the first prong of the ripeness analysis.  See Price, 2018 WL 3934213, at *7.

As set forth above, section -304 provides that judges placing individuals on supervised probation "shall determine the conditions of [probation], which shall include as a condition that the [DOC] supervising the individual may, in accordance with [Tennessee Code Annotated section] 40-28-305, impose graduated sanctions adopted by the [DOC] for violations of the conditions of [probation]."  Tenn. Code Ann. § 40-28-304.  Although not a model of clarity, section -304 requires a trial court imposing a sentence of probation to perform two distinct tasks.

The first task is to determine the "conditions of [probation]."  Elsewhere referred to as "the terms of supervision," Tenn. Code Ann. § 40-35-303(d) (2014 & Supp. 2018), these "conditions" are judicially-imposed requirements that a probationer must satisfy to avoid the possibility of having his probation revoked.  Thus, at the time of sentencing, a trial court may order a probationer to "[m]eet [his] family responsibilities"; engage in "a specific employment or occupation"; "[p]erform, without compensation, services in the community for charitable or governmental agencies"; "[u]ndergo available medical or psychiatric treatment"; "[p]ursue a prescribed secular course of study or vocational training"; "[r]efrain from possessing a firearm"; "[r]emain within prescribed geographical boundaries"; "[m]ake appropriate and reasonable restitution to the victim"; and/or "[u]ndergo an alcohol and drug assessment or treatment."  Id.[5]  The conditions of probation take two forms:  either prescribing behavior in which a probationer must engage or proscribing behavior in which a probationer must *not* engage.

The second task that section -304 imposes on trial judges is to include in the conditions of probation a notification provision (rather confusingly also called a "condition") informing the probationer that the DOC may handle violations of the conditions of probation.  It is this second task that both of the lower courts fastened on as creating an issue ripe for adjudication.

In our view, the notification requirement of section -304 relied on by both courts below clearly does not satisfy the first prong of the ripeness doctrine.  The lower courts interpreted section -304 as forcing a transfer of power from the judiciary to the executive branch, at the direction of the legislature, effective as of the time the notification provision is incorporated into a judgment order.  This transfer, according to the trial court and the Court of Criminal Appeals, triggered a separation of powers issue calling for an immediate determination of whether probation violation matters are to be addressed exclusively by the judiciary or may be delegated, at least partially, to the executive branch.  Respectfully, we disagree with this interpretation.

---

[5] This list is not intended to be an exclusive list of conditions that a trial court may place upon a particular defendant based upon the specific facts of each case.

9

We acknowledge that an actual party in interest, that is, a probationer, at some point, may make the argument that probation violation matters may be determined only by the judiciary. However, no probationer will be in a position to make such an argument unless and until someone other than a member of the judiciary makes a determination about a probation violation matter. That triggering event will not occur unless and until a probation violation, at least allegedly, has taken place. Obviously, no such violation had been alleged as of the time the trial court made its ruling regarding the facial constitutionality of the PSA in this matter because the pleas had not even been entered.[6]

In addition to concluding that section -304 triggered a separation of powers issue, the trial court also concluded that a constitutional due process issue was "ripe and fit for decision" because section -304 "requires the trial judge to immediately include a provision within a criminal judgment that has the plain effect, validly or not, of limiting due process rights which exist now but which will not be exercised until a future time." Finally, the trial court concluded that an equal protection issue was ripe because other provisions of the PSA "establish[] two classes of probationers with differing due process rights." The Court of Criminal Appeals agreed that both of these issues were ripe for adjudication. See Price, 2018 WL 3934213, at *13-17.

Again, while probationers later facing the determination of an alleged probation violation matter by the DOC *might* claim a constitutional violation, neither of the Defendants was facing such a determination here.

In short, any issue, constitutional or otherwise, that may arise from the DOC sanctioning a probationer accused of violating the conditions of his probation will remain inchoate unless and until such an accusation has been made and acted upon by the DOC. No such accusation had been made, much less acted upon, as of the time the trial court rendered its ruling in these cases. Indeed, no such accusation *could* have been made, as the trial court rendered its ruling that the PSA was facially unconstitutional even before it sentenced either of the Defendants.

We hold that the constitutional issues identified and ruled upon by the courts below were not fit for judicial decision at the time of the trial court's ruling. Accordingly, the first prong of the ripeness analysis has not been satisfied in these cases.

The Second Prong

The trial court also concluded that the second prong of the ripeness analysis was satisfied, stating as follows:

_____

[6] For this reason, a defendant sentenced to probation whose conditions of probation include the notification provision required by section -304 may not be deemed to have waived this issue by failing to object at the time of sentencing.

10

The hardship caused to all parties from the uncertainty surrounding probationer status and acceptable procedure, which would be caused by withholding the resolution of these issues by the courts, outweighs any possible concern about a court prematurely deciding the questions. Furthermore, the issues raised are common to the many thousands of persons likely to be placed on probation in Tennessee on or after January 1, 2017.

We disagree with the trial court's ruling on the second prong of the ripeness analysis, as well. The second prong of the ripeness analysis requires a court to consider whether withholding adjudication of the issue presented will impose any meaningful hardship on the parties. West, 468 S.W.3d at 492. It bears emphasizing that the parties in this matter are the State of Tennessee and the two Defendants. As of the time of the trial court's ruling, neither of the Defendants was facing an accusation that he had violated the terms of his probation. Therefore, neither of the Defendants was facing the prospect of a probation violation matter being determined by someone other than a trial judge. Accordingly, withholding adjudication of the constitutional issues addressed by the trial court (and not raised by any party until asked to do so by the trial court) would not have imposed any meaningful hardship on the State or either of the Defendants.

Similarly, the Court of Criminal Appeals concluded as to the second prong as follows:

[T]he Defendants will suffer a hardship if their claims are not heard because the condition of probation is imposed by operation of law and immediately deprives them of judicial review of certain aspects of their probation. It directly [a]ffects the day-to-day activities of probationers because (1) they are required to comply with the sanctions grid by operation of law; (2) their right to judicial determination of probation violations, albeit "technical," is transferred from the court to a probation or parole officer; and (3) there is no judicial review of these infractions. Here, it is not a question of when or whether the Defendants violate their probation but rather the validity of the graduated sanctions grid as a condition of their probation. We are simply unable to distinguish the posture of this case from the many appeals from a trial court's imposition of special conditions of probation which this court has reviewed immediately after probation is granted.

Price, 2018 WL 3934213, at *7.

We disagree with the Court of Criminal Appeals' assertion that the provisions of the PSA relating to the punishment of some probation infractions "immediately deprive[] [the Defendants] of judicial review of certain aspects of their probation" and that the

11

provisions have a direct impact on the Defendants' "day-to-day activities." The PSA provisions at issue do *not* immediately deprive the Defendants of anything. As we continue to emphasize, the provisions of the PSA that ostensibly limit judicial review are triggered only upon a probation officer determining that a defendant has violated the terms of his or her probation and subsequently imposing a graduated sanction. See Tenn. Code Ann. § 40-28-305(c) (providing that if a probationer objects to a graduated sanction imposed by his probation officer, he may be entitled to an administrative review). Therefore, the Defendants were not "immediately deprived" of any judicial review upon being sentenced to probation. Moreover, we fail to see how the PSA impacts the Defendants' day-to-day activities. The Defendants are not "required to comply with the sanctions grid." The PSA requires *probation officers* to comply with the sanctions grid *in the event of a probation violation*. Nor are the Defendants affected by any "loss" of judicial determination or review of probation violations *unless and until they commit a probation violation*. We reiterate that, at the time the trial court issued its ruling that the PSA was facially unconstitutional, the charges against the Defendants had not yet even been resolved.

Finally, the notification "condition" required by section -304 is not comparable to the "special conditions of probation which [the Court of Criminal Appeals] has reviewed immediately after probation is granted." Price, 2018 WL 3934213, at *7. The examples of the "special conditions" cited by the Court of Criminal Appeals include the requirement that the probationer "surrender the use and possession of one of his vehicles to the [local] [p]olice [d]epartment for storage" for two years, State v. Bouldin, 717 S.W.2d 584, 585 (Tenn. 1986), and the requirement that the probationer relocate from his residence of thirty years to live at least one mile away from the victim, State v. Pressinell, No. E2008-01290-CCA-R3-CD, 2009 WL 321215, at *4-5 (Tenn. Crim. App. Feb. 10, 2009). As set forth above, the terms of supervision that trial courts are required to impose for sentences of probation may require defendants to engage in particular behavior or to refrain from engaging in particular behavior. Such terms of supervision are, indeed, subject to immediate review. See Stiller v. State, 516 S.W.2d 617, 620 (Tenn. 1974) (recognizing that defendants have the right to seek appellate review and relief from terms of supervision that are "harsh, oppressive or palpably unjust"); see also, e.g., State v. Mathes, 114 S.W.3d 915, 916 (Tenn. 2003) (invalidating condition of probation requiring defendant to legitimate her child); State v. Burdin, 924 S.W.2d 82, 84, 87 (Tenn. 1996) (invalidating condition of probation requiring defendant to place sign in yard stating that he was a convicted child molester). The notification provision required by section -304 is easily distinguished, as it requires no particular behavior (or avoidance of behavior) by a probated defendant, at all.

In sum, neither Defendant nor the State has or will suffer any meaningful hardship if the issues regarding the provisions of the PSA dealing with probation violations are not decided at this time. Accordingly, we hold that the second prong of the ripeness analysis has not been satisfied in these matters. Indeed, the actions by the courts below in these

cases in holding certain provisions of the PSA facially unconstitutional under these circumstances fall clearly within the exact type of premature adjudication that inappropriately entangles a court in potential abstract disagreements. See West, 468 S.W.3d at 490.[7]

## Conclusion

The constitutional issues identified and ruled upon by the courts below were not ripe for adjudication. Accordingly, we reverse the judgment of the Court of Criminal Appeals and remand this matter to the trial court.[8] The trial court forthwith shall enter amended judgment orders in the Defendants' cases including the "condition" required by Tennessee Code Annotated section 40-28-304 (2018).[9]

_____
JEFFREY S. BIVINS, CHIEF JUSTICE

---

[7] Additionally, the record does not indicate the authority upon which the trial court relied to raise this constitutional issue on its own motion and to schedule a hearing on this matter. The Defendants' plea agreements included specific sentences and therefore were governed by Tennessee Rule of Criminal Procedure 11(c)(1)(C). As a result, the trial court's authority was limited to accepting or rejecting the pleas. Tenn. R. Crim. P. 11(c)(3)(A). Moreover, by raising the issue on its own motion, the trial court apparently failed to consider that parties pleading guilty have the right to waive nonjurisdictional issues, including constitutional issues. State v. Pettus, 986 S.W.2d 540, 542 (Tenn. 1999) ("The principle is well-settled in Tennessee jurisprudence that the voluntary entry of an informed and counseled guilty plea constitutes an admission of all facts necessary to convict and waives all non-jurisdictional defects and constitutional irregularities which may have existed prior to the entry of the guilty plea." (citations omitted)).

[8] Our holding on the ripeness issue pretermits any consideration of the merits of any constitutional claims. While we recognize that, given the PSA's benefits to both many defendants and the State, a proper constitutional challenge may be long in coming, this does not allow us to ignore long-standing, well-settled case law regarding the proper time to address constitutional challenges. We also note that, although the dissenting judge in the Court of Criminal Appeals would have remanded these cases to a different trial judge, we have chosen not to address that issue given that no party, at least at this point, has requested the recusal of the trial judge in these cases.

[9] Defendant Price entered a plea of "no contest" to the two charges against him, and the trial court accepted that plea. However, both judgment orders have the box for "Pled Guilty" checked rather than the box for "Pled Nolo." On remand, the trial court shall correct this clerical error.