IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

**CHARLES RICE v. STATE OF TENNESSEE**

**Criminal Court for Shelby County**
**No. 01-00035**

_____

**No. W2025-02029-CCA-R10-PD**

_____

**ORDER**

This matter is before the Court upon the application of the Petitioner, Charles Rice, for an extraordinary appeal pursuant to Tennessee Rule of Appellate Procedure 10. The Petitioner seeks review of the trial court's order denying his motion to disqualify the Attorney General's Office from representing the State in his capital intellectual disability proceeding. The Petitioner raises numerous constitutional and statutory challenges to 2023 Tenn. Pub. Acts ch. 182 ("the Act"), which gives the Attorney General "exclusive control over the state's defense of the request for collateral review" in capital cases. The State has responded in opposition to the application, arguing that the Petitioner lacks standing to challenge the Act and, alternatively, that the Petitioner has failed to establish that this case merits extraordinary review. For the reasons set forth below, the Petitioner's application is hereby denied.

Background

In June 2000, the Petitioner "lured the victim, his thirteen-year-old step-daughter, into the woods, raped her, and stabbed her sixteen times, ultimately causing her death." *State v. Rice*, 184 S.W.3d 646, 679 (Tenn. 2006), *cert. denied*, 549 U.S. 841 (2006). The Petitioner was convicted of first degree premeditated murder and first degree felony murder, and the jury imposed a sentence of death. *Id.* at 653. The Tennessee Supreme Court affirmed his conviction and sentence. *Id.* The Petitioner unsuccessfully sought post-conviction relief. *See Rice v. State*, No. W2011-01069-CCA-R3-PD, 2013 WL 1229527 (Tenn. Crim. App. Mar. 27, 2013), *perm. app. denied* (Tenn. Sept. 11, 2013), *cert. denied*, 572 U.S. 1063 (2014). The Petitioner then filed two motions to reopen post-conviction proceedings, both of which were denied. *See Rice v. State*, No. W2017-01719-CCA-R28-PD (Tenn. Crim. App. Nov. 14, 2017) (order denying application for permission

1

to appeal), *perm. app. denied* (Tenn. Mar. 15, 2018); *Rice v. State*, No. W2025-00088-CCA-R28-PD (Tenn. Crim. App. Apr. 29, 2025) (order denying application for permission to appeal), *perm. app. denied* (Tenn. Sept. 10, 2025).

On May 10, 2022, the Petitioner filed a petition to determine whether he is intellectually disabled and, thus, ineligible for the death penalty pursuant to Tennessee Code Annotated § 39-13-203(g). The State was originally represented by the Shelby County District Attorney's Office. In April 2023, the General Assembly passed the Act, amending several statutes to designate the Attorney General as the representative of the State in capital collateral review proceedings in the trial court. *See* 2023 Tenn. Pub. Acts ch. 182. Specifically, the Act added the following subsection to Tennessee Code Annotated § 40-30-114 of the Post-Conviction Procedure Act:

> In cases where a defendant has been sentenced to death and is seeking collateral review of a conviction or sentence, the attorney general and reporter has exclusive control over the state's defense of the request for collateral review and has all of the authority and discretion that the district attorney general would have in non-capital cases as well as any additional authority provided by law. The attorney general and reporter is not bound by any stipulations, concessions, or other agreements made by the district attorney general related to a request for collateral review.

T.C.A. § 40-30-114(c)(1); *see* 2023 Tenn. Pub. Acts ch. 182, § 1. "Collateral review" includes intellectual disability proceedings under Tennessee Code Annotated § 39-13-203(g). T.C.A. § 40-30-114(c)(4)(A).

Both the Petitioner and the Shelby County District Attorney General filed motions to disqualify the Attorney General's Office from representing the State on the basis that the Act was unconstitutional.[1] The Petitioner raised the following constitutional challenges to the Act: 1) the Act violated Article VI, § 5 of the Tennessee Constitution by divesting the District Attorney General of his authority to represent the State in trial courts exercising criminal jurisdiction; 2) the Act violated Article VI, § 5 of the Tennessee Constitution by usurping judicial authority to appoint a prosecutor *pro tempore*; and 3) the Act violated Article II, § 17 of the Tennessee Constitution because the caption of the bill was too broad to provide adequate notice of the proposed legislation. The Attorney General filed a response arguing that the Petitioner lacked standing to challenge the constitutionality of the Act and that the Act otherwise passed constitutional muster.

---

[1] The Shelby County District Attorney General did not join in the Petitioner's Rule 10 application or file a separate Rule 10 application in this Court. Accordingly, this order will not address any separate issues presented by or related to the District Attorney General.

The trial court stayed proceedings in this case pending the outcome of the interlocutory appeal in *McKay v. State*, which raised similar constitutional challenges. On October 4, 2024, this Court issued an opinion holding that the Act "does not violate Article VI, § 5 [of the Tennessee Constitution] by transferring representation of the State in trial-level capital collateral review proceedings from the locally elected district attorney to the Attorney General." *McKay v. State*, No. W2023-01207-CCA-R9-CO, 2024 WL 4404318, at *12 (Tenn. Crim. App. Oct. 4, 2024).[2] The Tennessee Supreme Court denied McKay's application for permission to appeal but vacated the part of this Court's opinion declining to address the issue of standing because it had not been adequately preserved and presented by the parties. The Tennessee Supreme Court held that "[c]onstitutional standing is an irreducible and indispensable jurisdictional requirement in public rights cases that courts must always consider." *McKay v. State*, 706 S.W.3d. 338, 340 (cleaned up). The court concluded that the Shelby County District Attorney had standing to challenge the constitutionality of the Act but declined to consider whether McKay also had standing. *Id.* at 341. The court expressly "left undisturbed" this Court's "holding that section 40-30-114(c)(1) does not violate Article VI, Section 5" of the Tennessee Constitution. *Id.*

On May 9, 2025, the trial court held a hearing on the Petitioner's and District Attorney's remaining challenges to the Act.[3] The trial court entered an order denying the disqualification motions on September 3, 2025. The trial court found that the Petitioner had standing to challenge the Act because he "is a member of the targeted group affected by the Act."[4] The trial court disagreed with the Attorney General's contention that the Petitioner had to show how the identity of the State's representative would impact the resolution of his case in order to establish an injury. The trial court found that the Act's designation of the Attorney General as the State's representative in capital collateral proceedings "d[id] not equate" to the appointment of an attorney *pro tempore* in violation of Article VI, § 5. Although the post-conviction court found that "the Act arguably removes the judicial check on abusive prosecutorial authority" because the *pro tempore* clause of Article IV, § 5 does not apply to the Attorney General, it concluded that this constitutional power does not extend to collateral proceedings based on this Court's rationale in *McKay*. *See* 2024 WL 4404318, at *7-8. The trial court found that the Act did not run afoul of Article II, § 17 because its subject (capital collateral review proceedings)

---

[2] Although both the trial court and this Court certified the Article II, § 17 issue regarding the bill's caption, that issue was abandoned by the parties during briefing and argument. *See McKay*, 2024 WL 4404318, at *2 n.2.

[3] The hearing was held jointly with capital defendant Michael Rimmer. Counsel for the Petitioner adopted many of the arguments presented by counsel for Mr. Rimmer, and vice versa.

[4] Currently, the Act applies to approximately twenty capital defendants seeking some form of collateral review in the state trial courts.

generally related to its caption (criminal justice). The trial court noted that neither an overbroad caption nor "[a] wholesale change from the original bill" is objectionable under Article II, § 17 as long as the changes are within the scope of the original caption.[5]

On October 8, 2025, the Petitioner filed a motion for permission to seek an interlocutory appeal pursuant to Tennessee Rule of Appellate Procedure 9 or for reconsideration of the disqualification motion. The Petitioner argued that interlocutory review would "prevent needless re-litigation of Mr. Rice's intellectual disability petition, provide critical direction to trial courts presiding over other capital cases faced with these same issues, and ensure efficient and consistent resolution of important constitutional questions of statewide significance." Additionally, the Petitioner asserted that because the trial court's order was "taken almost verbatim" from orders filed in other cases, he would suffer irreparable harm from the trial court's failure to use its own independent reasoning and judgment. Finally, despite acknowledging the lack of "disparate opinions," the Petitioner argued that interlocutory review was necessary to develop a uniform body of law. The Attorney General filed a response in opposition, arguing that review after final judgment would not be ineffective or cause irreparable harm. The Attorney General noted that since *McKay*, other trial courts had consistently held that the Act was constitutional and that disqualification was not warranted. Alternatively, the Attorney General requested that if the trial court granted an interlocutory appeal, it should also certify the issue of the Petitioner's standing.

On November 18, 2025, the trial court entered an order denying the Rule 9 motion. The trial court found that the Petitioner would not suffer irreparable injury and that he could seek review of these issues in an appeal as of right following a final order. The trial court found that an interlocutory appeal would not reduce the duration and expense of litigation. Given similar rulings issued in other capital collateral review cases, the trial court found that the likelihood of reversal was minimal and that there was not a need to develop a uniform body of law. *See* Tenn. R. App. P. 9(a)(1)-(3). Finally, the trial court insisted that it did use its independent judgment in ruling on the disqualification motions and that there was no legal basis for reconsideration.

On December 18, 2025, the Petitioner filed in this Court an application for an extraordinary appeal pursuant to Tennessee Rule of Appellate Procedure 10. The Petitioner argues that the trial court committed a plain and palpable abuse of discretion in denying each of the issues raised by the Petitioner. The Petitioner asserts that the trial

---

[5] The trial court's order addresses additional claims raised by the Petitioner in a supplemental motion to disqualify the Attorney General. The supplemental motion is not included in the *ad hoc* record before this Court, and the Petitioner indicates that those claims were rendered moot by the trial court's denial of his motion to reopen post-conviction proceedings. *See Rice v. State*, No. W2025-00088-CCA-R28-PD (Tenn. Crim. App. Apr. 29, 2025) (order).

court's denial of his Article II, § 17 claim "would impose no limits on the breadth of a legislative caption and no limit to legislative subterfuge." The Petitioner argues that the trial court improperly relied upon *McKay* when denying his claim that the Act "effectively" appoints the Attorney General as an attorney *pro tempore* in violation of Article VI, § 5. The Petitioner further asserts that the trial court's interpretation of the Act "strips trial courts of their ability to appoint an attorney *pro tempore* in situations where the Attorney General must be disqualified," creating a potential due process violation.[6] Finally, the Petitioner argues that because the post-conviction court's order is similar to orders issued in other cases, the court failed to exercise its own independent reasoning and judgment, which "departed from the essential requirements of the law" and "effectively denied [the Petitioner] his day in court."

The State filed a response in opposition, arguing that the Petitioner lacks standing to challenge the Act as a jurisdictional prerequisite to seeking an extraordinary appeal. *See McKay*, 706 S.W.3d. at 340. Alternatively, the State argues that the Petitioner failed to "meet the high bar for extraordinary review." The State contends that the post-conviction court did not depart from the accepted and usual course of judicial proceedings and appropriately applied the "strong presumption that acts passed by the legislature are constitutional." *See State v. Decosimo*, 555 S.W.3d 494, 506 (Tenn. 2018).

Analysis

Rule 10 provides for the granting of an extraordinary appeal in the discretion of this Court alone where the trial court has "so far departed from the accepted and usual course of judicial proceedings as to require immediate review" or "if necessary for complete determination of the action on appeal." Tenn. R. App. P. 10(a). "The circumstances in which review is available . . . are very narrowly circumscribed to those situations in which the trial court . . . has acted in an arbitrary fashion, or as may be necessary to permit complete appellate review on a later appeal." Tenn. R. App. P. 10, Adv. Comm. Cmt. As the Tennessee Supreme Court has explained:

> An appellate court should grant a Rule 10 extraordinary appeal only when the challenged ruling represents a fundamental illegality, fails to proceed according to the essential requirements of the law, is tantamount to the denial of a party's day in court, is without legal authority, is a plain or palpable

---

[6] Although briefly mentioned in the Petitioner's Rule 9 motion, the possibility that the Act would create a due process violation if there were a conflict of interest was not presented to and ruled upon by the trial court nor is it ripe for consideration by this Court *See State v. Price*, 579 S.W.3d 332, 338 (Tenn. 2019) ("An issue is not fit for judicial decision if it is based 'on hypothetical and contingent future events that may never occur.'"); *State v. Hardison*, 680 S.W.3d 282, 309 (Tenn. Crim. App. 2023) ("[A] party may not take one position regarding an issue in the trial court, change his strategy or position in mid-stream, and advocate a different ground or reason on appeal.").

5

> abuse of discretion, or results in either party losing a right or interest that may never be recaptured.

*Gilbert v. Wessels*, 458 S.W.3d 895, 898 (Tenn. 2014) (citing *State v. McKim*, 215 S.W.3d 781, 791 (Tenn. 2007); *State v. Willoughby*, 594 S.W.2d 388, 392 (Tenn. 1980)). "Those alleged errors not rising to the level required by Rule 10 can be reviewed in the normal course of an appeal after a final judgment has been entered." *Id.* at 899.

Like an interlocutory appeal, an extraordinary appeal "is an exception to the general rule that requires a final judgment before a party may appeal as of right." *State v. Gilly*, 173 S.W.3d 1, 5 (Tenn. 2005). Such appeals are disfavored, particularly in criminal cases, because "interlocutory review of pretrial rulings can create piecemeal appellate litigation and the 'encouragement of delay [that] is fatal to the vindications of the criminal law.'" *Id.* (quoting *United States v. MacDonald*, 435 U.S. 850, 853-54 (1978)); *see also Reid v. State*, 197 S.W.3d 694, 699 (Tenn. 2006). Generally, when a trial court has denied a request for a Rule 9 interlocutory appeal, this Court must respect that discretionary decision and refrain from granting an application for a Rule 10 extraordinary appeal "unless the trial court's alleged error qualifies for immediate review under the specific criteria indicated by Rule 10." *Gilbert*, 458 S.W.3d at 899. "Unlike Rule 9 appeals, Rule 10 appeals are reserved only for *extraordinary* departures from the accepted and usual course of judicial proceedings." *Id.* at 898 (emphasis in original).

In this case, the trial court did not depart from the accepted and usual course of judicial proceedings and did not act in an arbitrary fashion. The trial court allowed the parties to file ample briefing on the issues, conducted a hearing to allow counsel to present oral arguments, and issued a thorough order analyzing each issue presented by the parties and citing relevant case law. Just because the Petitioner disagrees with the trial court's analysis does not mean that the court committed a plain and palpable abuse of discretion. Even an alleged erroneous legal ruling, in and of itself, does not necessarily warrant the granting of an extraordinary appeal. However, we do not reach the issue of whether the trial court's ruling was correct. Rather, we conclude that the trial court's ruling does not rise to the level contemplated by the high standards of a Rule 10 extraordinary appeal. The Petitioner will not be denied his day in appellate court as each of these issues will be reviewable in an appeal as of right following a final judgment.[7] If the Petitioner is granted relief on his intellectual disability petition, these issues become moot.

---

[7] We acknowledge the State's position that this Court should deny the Petitioner's application because he lacks standing to challenge the constitutionality of the Act, which is a jurisdictional prerequisite. *See McKay*, 706 S.W.3d at 340. However, because this Court is declining to accept discretionary jurisdiction in this case, we do not wish to pretermit the parties from fully litigating the standing issue in a later appeal.

6

Based on the foregoing, we conclude that the Petitioner has failed to carry his burden of showing that the trial court so far departed from the accepted and usual course of judicial proceedings as to require immediate appellate review. Accordingly, the Petitioner's application for an extraordinary appeal pursuant to Rule 10 is hereby DENIED. Because it appears that the Petitioner is indigent, costs associated with this proceeding shall be taxed to the State.

s/ Camille R. McMullen, Judge
s/ J. Ross Dyer, Judge
s/ Matthew J. Wilson, Judge