IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

**JAMES HAWKINS v. STATE OF TENNESSEE**

**Criminal Court for Shelby County**
**No. 08-06057**

_____

**No. W2025-02015-CCA-R10-PD**

_____

**ORDER**

This matter is before the Court upon the application of the Petitioner, James Hawkins, for an extraordinary appeal pursuant to Tennessee Rule of Appellate Procedure 10. The Petitioner seeks review of the trial court's order denying his motion to disqualify the Attorney General's Office from representing the State in his capital post-conviction proceeding. The Petitioner raises numerous constitutional and statutory challenges to 2023 Tenn. Pub. Acts ch. 182 ("the Act"), which gives the Attorney General "exclusive control over the state's defense of the request for collateral review" in capital cases. The State has responded in opposition to the application, arguing that the Petitioner lacks standing to challenge the Act and, alternatively, that the Petitioner has failed to establish that this case merits extraordinary review. For the reasons set forth below, the Petitioner's application is hereby denied.

Background

The Petitioner was convicted of premeditated first degree murder, initiating a false report, and abuse of a corpse for the February 2008 death of Charlene Gaither, his girlfriend and the mother of his three children. *State v. Hawkins*, 519 S.W.3d 1, 16 (Tenn. 2017). The Petitioner was sentenced to death and a consecutive sentence of eighteen years. *Id.* at 32. This Court affirmed the Petitioner's convictions and sentences, along with the trial court's denial of a petition for writ of error coram nobis. *See State v. Hawkins*, No. W2012-00412-CCA-R3-DD, 2015 WL 5169157 (Tenn. Crim. App. Aug. 28, 2015). The Tennessee Supreme Court likewise affirmed the Petitioner's convictions and sentences, and the United States Supreme Court denied certiorari review. *Hawkins*, 519 S.W.3d at 54; *Hawkins v. Tennessee*, 583 U.S. 949 (2017).

In March 2018, the Petitioner filed a timely petition for post-conviction relief.

1

After the Shelby County District Attorney's Office recused themselves in 2019, the State was represented by a series of attorneys *pro tempore* from the District Attorney's Offices for the 21st, 22nd, 25th, and 26th Judicial Districts. In April 2023, the General Assembly passed the Act, amending several statutes to designate the Attorney General as the representative of the State in capital collateral review proceedings in the trial court. *See* 2023 Tenn. Pub. Acts ch. 182. Specifically, the Act added the following subsection to Tennessee Code Annotated § 40-30-114 of the Post-Conviction Procedure Act:

> (c)(1) In cases where a defendant has been sentenced to death and is seeking collateral review of a conviction or sentence, the attorney general and reporter has exclusive control over the state's defense of the request for collateral review and has all of the authority and discretion that the district attorney general would have in non-capital cases as well as any additional authority provided by law. The attorney general and reporter is not bound by any stipulations, concessions, or other agreements made by the district attorney general related to a request for collateral review.

2023 Tenn. Pub. Acts ch. 182, § 1. The Act specified that the term collateral review "does not mean the trial of an original petition for post-conviction relief" for any defendant who "has been sentenced to death after March 1, 2023[.]" T.C.A. § 40-30-114(c)(4)(B).

The Petitioner filed a motion to disqualify the Attorney General's Office from representing the State on the basis that the Act was unconstitutional. The Petitioner raised the following constitutional challenges to the Act: 1) the Act violated his right to equal protection under both the state and federal constitutions by arbitrarily classifying original post-conviction petitioners by sentencing date; 2) the Act violated Article II, § 17 of the Tennessee Constitution because the caption of the bill was too broad to provide adequate notice of the proposed legislation; 3) the Act violated Article VI, § 5 of the Tennessee Constitution by divesting the District Attorney General of his authority to represent the State in trial courts exercising criminal jurisdiction and by derogating from the judicial power to ; and 4) the Act violated Article VI, § 5 of the Tennessee Constitution by usurping judicial authority to appoint an attorney *pro tempore*. Additionally, the Petitioner argued that the plain language of the Act did not permit the Attorney General to "represent" the State during the post-conviction hearing; instead, the Attorney General's role was limited to exercising supervisory control over the State's defenses and filing a response to the petition. The Attorney General filed a response arguing that the Petitioner lacked standing to challenge the constitutionality of the Act and that the Act otherwise passed constitutional muster.

The post-conviction court stayed proceedings in this case pending the outcome of the interlocutory appeal in *McKay v. State*, which raised similar constitutional challenges. On October 4, 2024, this Court issued an opinion holding that the Act "does not violate

Article VI, § 5 [of the Tennessee Constitution] by transferring representation of the State in trial-level capital collateral review proceedings from the locally elected district attorney to the Attorney General." *McKay v. State*, No. W2023-01207-CCA-R9-CO, 2024 WL 4404318, at *12 (Tenn. Crim. App. Oct. 4, 2024).[1]  The Tennessee Supreme Court denied McKay's application for permission to appeal but vacated the part of this Court's opinion declining to address the issue of standing because it had not been adequately preserved and presented by the parties.  The Tennessee Supreme Court held that "[c]onstitutional standing is an irreducible and indispensable jurisdictional requirement in public rights cases that courts must always consider." *McKay v. State*, 706 S.W.3d 338, 340 (cleaned up).  The court concluded that the Shelby County District Attorney had standing to challenge the constitutionality of the Act but declined to consider whether McKay also had standing.  *Id*. at 341.  The court expressly "left undisturbed" this Court's "holding that section 40-30-114(c)(1) does not violate Article VI, Section 5" of the Tennessee Constitution.  *Id*.

On September 5, 2025, the post-conviction court held a hearing on the Petitioner's remaining challenges to the Act.  The post-conviction court entered an order denying the disqualification motion on November 17, 2025.  The post-conviction court found that the Petitioner had standing to challenge the Act because he "is a member of the targeted group affected by the Act."[2]  The post-conviction court disagreed with the Attorney General's contention that the Petitioner had to show how the identity of the State's representative would impact the resolution of his post-conviction proceedings in order to establish an injury.  With respect to the Petitioner's equal protection claim, the post-conviction court agreed that the Act "create[d] two classes of similarly situated capital original post-conviction petitioners" based upon sentencing date.  The post-conviction court found that the Attorney General had not shown a rational basis for the classification because there was "no discernible connection between the date of sentencing and the efficiency of original post-conviction proceedings."  However, the post-conviction court concluded that the Petitioner had failed to show that the Act had a discriminatory effect or purpose and denied the equal protection challenge.  Alternatively, the post-conviction court found that under the doctrine of elision, the Legislature would have still passed the Act even with the subsection containing the offending date-based classification severed, thus giving the Attorney General's office control of all capital post-conviction proceedings.

The post-conviction court found that the Act's designation of the Attorney General as the State's representative in capital collateral proceedings "d[id] not equate" to the

---

[1] Although both the trial court and this Court certified the Article II, § 17 issue regarding the bill's caption, that issue was abandoned by the parties during briefing and argument.  *See McKay*, 2024 WL 4404318, at *2 n.2.

[2] There are only eight capital defendants, including the Petitioner, who have or will have original post-conviction proceedings subject to the terms of the Act.  In total, the Act applies to approximately twenty capital defendants currently seeking some form of collateral review in the state trial courts.

3

appointment of an attorney *pro tempore* in violation of Article VI, § 5. The post-conviction court found that "the Act does not extinguish the trial court's power to appoint an attorney *pro tempore* when a district attorney fails or refuses to attend and 'prosecute' a case, as defined in *McKay*." The post-conviction court found that the Act was "generally consistent with" Article II, § 17 because its subject (capital collateral review proceedings) properly related to its caption (criminal justice). The post-conviction court noted that neither an overbroad caption nor "[a] wholesale change from the original bill" is objectionable under Article II, § 17 as long as the changes are within the scope of the original caption. With regard to the Petitioner's statutory challenge, the post-conviction court rejected the Petitioner's "unnatural reading of the statute," concluding that "[t]he designation of the Attorney General as the state's representative is subsumed in the natural and ordinary meaning of the term 'exclusive control.'"

On December 17, 2025, the Petitioner filed in this Court an application for an extraordinary appeal pursuant to Tennessee Rule of Appellate Procedure 10. The Petitioner argues that the post-conviction court committed a plain and palpable abuse of discretion in denying each of the issues raised by the Petitioner. Specifically, the Petitioner argues that the post-conviction court improperly required a showing that the Act had a discriminatory effect or purpose after concluding that it failed the equal protection rational-basis test. The Petitioner contends that the post-conviction court's alternative holding improperly applied the "disfavored" doctrine of elision and engaged in judicial legislation. The Petitioner asserts that the post-conviction court's denial of his Article II, § 17 claim "sets no limits to the breadth of a bill's caption." By denying his claim that the Act violates Article VI, § 5 by usurping the judicial power to appoint an attorney *pro tempore*, the Petitioner contends that the post-conviction court's ruling "would allow for a due process violation to occur should a conflicted prosecutor be designated by the Attorney General."[3] The Petitioner also argues that the post-conviction court erred by rejecting his statutory interpretation claim. Finally, the Petitioner argues that the post-conviction court's ruling is "tantamount to denying [the Petitioner] his day in court and will cause him to lose a right or interest [that] will never be recaptured."

The State filed a response in opposition, arguing that the Petitioner lacks standing to challenge the Act as a jurisdictional prerequisite to seeking an extraordinary appeal. *See McKay*, 706 S.W.3d. at 340. Alternatively, the State argues that the Petitioner failed to "meet the high bar for extraordinary review." The State contends that the post-conviction court did not depart from the accepted and usual course of judicial proceedings

---

[3] We note that the primary issue argued by the Petitioner and ruled upon by the post-conviction court with regard to Article VI, § 5 was a separation of powers claim. Although counsel for the Petitioner argued the potential implications if there were to be a conflict of interest during the September 5 hearing, that issue is not ripe for consideration by this Court *See State v. Price*, 579 S.W.3d 332, 338 (Tenn. 2019) ("An issue is not fit for judicial decision if it is based 'on hypothetical and contingent future events that may never occur.'").

4

and appropriately applied the "strong presumption that acts passed by the legislature are constitutional." *See State v. Decosimo*, 555 S.W.3d 494, 506 (Tenn. 2018).

Analysis

Rule 10 provides for the granting of an extraordinary appeal in the discretion of this Court alone where the trial court has "so far departed from the accepted and usual course of judicial proceedings as to require immediate review" or "if necessary for complete determination of the action on appeal." Tenn. R. App. P. 10(a). "The circumstances in which review is available . . . are very narrowly circumscribed to those situations in which the trial court . . . has acted in an arbitrary fashion, or as may be necessary to permit complete appellate review on a later appeal." Tenn. R. App. P. 10, Adv. Comm. Cmt. As the Tennessee Supreme Court has explained:

> An appellate court should grant a Rule 10 extraordinary appeal only when the challenged ruling represents a fundamental illegality, fails to proceed according to the essential requirements of the law, is tantamount to the denial of a party's day in court, is without legal authority, is a plain or palpable abuse of discretion, or results in either party losing a right or interest that may never be recaptured.

*Gilbert v. Wessels*, 458 S.W.3d 895, 898 (Tenn. 2014) (citing *State v. McKim*, 215 S.W.3d 781, 791 (Tenn. 2007); *State v. Willoughby*, 594 S.W.2d 388, 392 (Tenn. 1980)). "Those alleged errors not rising to the level required by Rule 10 can be reviewed in the normal course of an appeal after a final judgment has been entered." *Id.* at 899.

Like an interlocutory appeal, an extraordinary appeal "is an exception to the general rule that requires a final judgment before a party may appeal as of right." *State v. Gilly*, 173 S.W.3d 1, 5 (Tenn. 2005). Such appeals are disfavored, particularly in criminal cases, because "interlocutory review of pretrial rulings can create piecemeal appellate litigation and the 'encouragement of delay [that] is fatal to the vindications of the criminal law.'" *Id*. (quoting *United States v. MacDonald*, 435 U.S. 850, 853-54 (1978)); *see also Reid v. State*, 197 S.W.3d 694, 699 (Tenn. 2006). "Unlike Rule 9 appeals, Rule 10 appeals are reserved only for *extraordinary* departures from the accepted and usual course of judicial proceedings." *Gilbert*, 458 S.W.3d at 898 (emphasis in original).

In this case, the post-conviction court did not depart from the accepted and usual course of judicial proceedings and did not act in an arbitrary fashion. The post-conviction court allowed the parties to file ample briefing on the issues, conducted a hearing to allow counsel to present oral arguments, and issued a thorough order analyzing each issue presented by the parties and citing relevant case law. Just because the Petitioner disagrees with the post-conviction court's analysis does not mean that the court committed a plain

and palpable abuse of discretion. Even an alleged erroneous legal ruling, in and of itself, does not necessarily warrant the granting of an extraordinary appeal. However, we do not reach the issue of whether the post-conviction court's ruling was correct. Rather, we conclude that the post-conviction court's ruling does not rise to the level contemplated by the high standards of a Rule 10 extraordinary appeal. The Petitioner will not be denied his day in appellate court as each of these issues will be reviewable in an appeal as of right following a final judgment.[4] If the Petitioner is granted post-conviction relief, these issues become moot.

Based on the foregoing, we conclude that the Petitioner has failed to carry his burden of showing that the post-conviction court so far departed from the accepted and usual course of judicial proceedings as to require immediate appellate review. Accordingly, the Petitioner's application for an extraordinary appeal pursuant to Rule 10 is hereby DENIED. Because it appears that the Petitioner is indigent, costs associated with this proceeding shall be taxed to the State.

s/ Robert W. Wedemeyer, Presiding Judge
s/ Camille R. McMullen, Judge
s/ Matthew J. Wilson, Judge

---

[4] We acknowledge the State's position that this Court should deny the Petitioner's application because he lacks standing to challenge the constitutionality of the Act, which is a jurisdictional prerequisite. *See McKay*, 706 S.W.3d at 340. However, because this Court is declining to accept discretionary jurisdiction in this case, we do not wish to pretermit the parties from fully litigating the standing issue in a later appeal.